TEAM CENTRAL INCORPORATED, a corporation of the State of Minnesota, Plaintiff,

v.

XEROX CORPORATION, a corporation of the State of New York, Defendant.

Civ. No. 4–84–318.

United States District Court, D. Minnesota, Fourth Division.

April 17, 1985.

---

David L. Black, Stacker & Ravich, Minneapolis, Minn., for plaintiff.

Eugene Johnson, and James Patterson, Dorsey & Whitney, Minneapolis, Minn., for defendant.

DIANA E. MURPHY, District Judge.

Plaintiff Team Central Incorporated (Team Central) brought this action against defendant Xerox Corporation (Xerox), asserting claims of unfair competition, trademark infringement, trademark dilution, and deceptive trade practices. Jurisdiction is invoked under 15 U.S.C. § 1121, 28 U.S.C. §§ 1338(a) and (b), and pendent and ancillary jurisdiction. On June 4, 1984, this court denied Team Central's motion for a preliminary injunction. The matter is now before the court upon defendant's motion for summary judgment.

*Background*

Many of the pertinent undisputed facts have been set out in the court's Memorandum Opinion and Order of June 4, 1984 and will be restated here. Team Central also contends that subsequent discovery has revealed other facts relevant to this motion.

Team Central is in the business of franchising and operating full line electronics stores. It has 92 retail store locations in 21 states of the Midwest and West. Eighty-four of such locations are franchised.

Team Central's stores sell audio, video, computer, and telecommunication equipment. Team Central purchases the products directly from vendors and then warehouses them for sale to its franchisees. Sales of computers and computer related equipment account for over 50% of the company's business.

Team Central is the owner of all rights, title, and interest in the following United States Trademark Registrations:

A. Registration No. 856,221, registered September 3, 1968, for the service mark "Team", for distributor services in the field of electronic apparatus, parts, components, equipment, and systems, at wholesale and retail, and including supplying, distributing, and advertising such goods in the electronics field, based on use from July 6, 1967.

B. Registration No. 1,004,101, registered February 4, 1975, for the service mark "Team Electronics", for distributor services in the field of electronic apparatus, parts, components and equipment, based on use from July 5, 1973 and July 6, 1967, as to "Team".

C. Registration No. 1,017,172, registered July 29, 1975 for the service mark "Team Electronics", for distributorship services in the field of electronic apparatus, parts, components, and equipment, based on use from at least as nearly as 1968.

D. Registration No. 1,130,151, registered January 29, 1980, for the service mark "Team Commercial Electronics", for distributorship services in the field of electronic apparatus, parts, components and equipment, based on use from July 1, 1976.

Pursuant to 15 U.S.C. §§ 1065 and 1115(a) and (b),[1] Team Central contends that all of these trademark registrations were incontestable by the date of the summary judgment hearing. Team Central argues therefore that it is conclusively presumed either that the mark is nondescrip-

---

1. 15 U.S.C. § 1065 provides for the incontestability of a registered mark when the mark has been in continuous use for five consecutive years subsequent to the date of its registration. This section contains certain exceptions, however. Subparagraph 4 provides as follows:

   (4) No incontestable right shall be acquired in a mark which is the common descriptive name of any article or substance, patented or otherwise.

15 U.S.C. § 1115(a) provides that any registration issued under the act is prima facie evidence of the registrant's exclusive right to the use of the registered mark. 15 U.S.C. § 1115(b) provides that if the registered mark has become incontestable under section 1065, the registration is conclusive evidence of the registrant's right to exclusive use.

tive or, if descriptive, has acquired secondary meaning. Thus Xerox cannot defend this action by claiming that the mark is invalid because it is descriptive. Team Central further asserts that its trademarks are the cornerstone of its franchising system.

Defendant Xerox is a multi-national corporation which sells a full line of information and communication related products, including copiers, duplicators, facsimile transceivers, personal computers, professional work stations, word processors, and typewriters under the Xerox brand name. The products are sold through a variety of marketing approaches, including a direct sales force, direct mail, telemarketing, three company-operated retail stores ("The Xerox Store") and third-party resellers.

Xerox has been involved in the sponsorship of various Olympic Games since 1960, and Xerox was an official sponsor for the summer 1984 Olympics. In 1983, as part of a promotional effort for a new series of copiers, Xerox sponsored 15 major marathon events around the world and assembled "Team Xerox"[2] consisting of Xerox employees and a group of world-class runners. The promotional effort was designed to emphasize the endurance capability of the copiers through the use of the marathon race theme.

The promotional effort was eventually expanded to include other Xerox products including its personal computers. Much of Xerox's advertising promotes the theme of Xerox equipment and Xerox employees working together as a team to satisfy customer needs. This theme has been captured in the slogan "Team Xerox", which appears to have been derived from an athletic context. Many of Xerox's ads draw an anology between "Team Xerox" and athletic teams. Moreover, Xerox's "Team Xerox" advertising effort focused heavily on the summer and winter Olympics. Team Central contends that Xerox is impermissably using the slogan "Team Xerox"

and its logo as its alternate company name and as an identifying symbol.

Team Central claims that the history of the Xerox campaign is central to this motion. Xerox first ran an ad containing the phrase "Introducing Team Xerox" for its Ethernet networking system in April of 1983. Before using the ad, a Xerox advertising employee checked with in-house counsel to determine whether the use of "Team Xerox" would pose any problems. Team Central claims that in-house trademark counsel for Xerox did not adhere to his usual practice of undertaking a trademark search before labelling "Team" generic. Xerox asserts, however, that its in-house counsel had no duty to investigate and that it was not his policy to search generic terms in any case.

Some time later in 1983, Xerox ran an ad for its 8010 Star Workstation which apparently used the logo form of "Team Xerox" for the first time. With the exception of these printed ads, Team Central states that Xerox kicked off its "Team Xerox" advertising campaign in February 1984, with its "Manifesto" ad and associated television commercials shown during the winter Olympics. It contends that because the Xerox campaign was actually in its infancy when this action was filed, it could not find evidence of market confusion. Team Central asserts that subsequent to the preliminary injunction hearing, it has encountered instances of actual confusion. It has specified twelve such episodes in its supplemental answer to interrogatory No. 11 of Xerox's interrogatories.

Xerox spent approximately $2,800,000 in 1983 on the "Team Xerox" campaign and $53,721,200 in 1984. It has budgeted $70,000,000 in 1985 for the campaign. "Team Xerox" ads have appeared in national print media, such as the *Wall Street Journal, Time,* and *Sports Illustrated,* and in network advertising during both regular and special programming.

Team Central first became aware of Xerox's ad campaign on January 30, 1984.

---

**2.** "Team Xerox" is a registered running team with the Athletic Congress. Team Xerox members compete in events around the world wearing "Team Xerox" shirts.

Team Central immediately wrote to Xerox and requested that the campaign be discontinued. When Xerox did not respond, Team Central commenced this suit on April 10, 1984.

Xerox argues that it is entitled to summary judgment because the record shows that its use of the word "team" is a noninfringing, generic use. To prove that use of the word "team" in the "team (proper name)" format is commonly accepted to indicate "team" in the generic sense, it has introduced over forty examples of such use. The examples include trademark registrations and trademark applications for registration, phone listings, advertisements, and newspaper clippings. In addition to this evidence, Xerox contends that the court is entitled to take judicial notice of common usage of the English language when resolving "genericness" questions. It notes that Team Central has conceded that "The Xerox Team" would be a generic use of "team" and argues that the placement of the word "team" should not change the result. Additionally, Xerox maintains that the use of "Team Xerox" in a logo format does not extend the use of "team" beyond its dictionary definition. Finally, Xerox argues that Team Central's trademark attorney, in an earlier, unrelated controversy, indicated in a letter that "team" is used in a descriptive, generic sense in phrases such as "Team Sports for athletic wear or Team-70 for a team architectual practice."

Team Central contends, by contrast, that summary judgment is inappropriate since the issue of "genericness" is a question of fact to be decided by the trier of fact. It relies on the opinion of Professor J. Thomas McCarthy who states that the ultimate issue is not whether the word "team" is generic, but whether "Xerox's use of the word 'team' is likely to cause confusion as to source, sponsorship, affiliation or connection." Declaration of Professor J. Thomas McCarthy, ¶ 4. In addition, Team Central asserts that Xerox is not using the dictionary definition of "team" because it includes machines in its group and "team" in the dictionary does not. Moreover, it

charges that Xerox uses "Team Xerox" in the logo format to identify the Xerox corporation and to show affiliations with another company. It also argues that depositions of Xerox advertising personnel show that the "team (proper name)" format was not common in the United States when Xerox began its campaign. Further, Team Central notes that the third parties who sought and obtained a federal trademark registration for use of the "team (proper name)" format did not disclaim the word "team" as generic.

*Discussion*

The principles of Fed.R.Civ.P. 56 govern in a trademark action just as in any other suit. *Nestle Co., Inc. v. Chesters Market, Inc.,* 571 F.Supp. 763, 768 (D.Conn.1983). In passing upon a summary judgment motion, the court is required to view the facts in the light most favorable to the nonmoving party, and the movant has the burden of establishing that no genuine issue of material fact remains and that the case may be decided as a matter of law. *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir. 1983); *Ralph's Distributing Co. v. AMF, Inc.,* 667 F.2d 670 (8th Cir.1981). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in pleadings and affidavits. *Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d 1076 (8th Cir.1980). The nonmoving party may not merely rest upon allegations or denials of the party's pleadings, however, but must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Burst v. Adolph Coors Co.,* 650 F.2d 930, 932 (8th Cir.1981).

■ Each trademark case must be decided upon its particular facts and where it seems that a trial is not likely to develop additional evidence, summary judgment is appropriate. *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.,* 498 F.Supp. 805, 810 (D.Mass.1980), *aff'd,* 657 F.2d 482 (1st Cir.1981); *United States Jaycees v. San Francisco Jr. Chamber of Com.,* 354 F.Supp. 61 (N.D.Cal.1972), *aff'd,*

513 F.2d 1226 (9th Cir.1975); *James Burrough Limited v. Beef/Eater Restaurants, Inc.,* 272 F.Supp. 489 (N.D.Ga.1967), *aff'd,* 398 F.2d 637 (5th Cir.1968). In particular, several courts have found that issues of genericness may be properly addressed upon a motion for summary judgment. *Gimix, Inc. v. JS & A Group, Inc.,* 699 F.2d 901 (7th Cir.1983); *S.S. Kresge Co. v. United Factory Outlet, Inc.,* 634 F.2d 1 (1st Cir.1980); *Miller Brewing Co. v. Jos. Schlitz Brewing Co.,* 605 F.2d 990 (7th Cir.1979), *cert. denied,* 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980).

■■■ As stated in the Memorandum Opinion and Order of June 21, 1984, only marks which are distinctive may be appropriated by one business to the exclusion of all others. 3 Callman, *Unfair Competition, Trademarks & Monopolies,* § 18.01. To be distinctive, a mark must have three characteristics: (1) the mark must be sufficiently unique to be distinguishable from others; (2) the mark must not describe or signify characteristics which the designated goods or services share with those emanating from other sources; and (3) the mark must be recognizable as an indicium of source, rather than as a decorative symbol or pattern or as a sample of text conveying information other than source identity. *Id.*

■■■ Marks which are merely generic or descriptive are not subject to trademark protection unless they have acquired a secondary meaning. *Id.* Generic marks are marks which include "[w]ords which embrace an entire class of products or services, not all of which necessarily emanate from the same source ...." *Id.* at § 18.03. Descriptive marks are "[w]ords, phrases, signs or pictures which refer to any feature of the product or service—its peculiarities, appearance, fragrance, character or quality, its effect or purpose, or the manner of its use and which, as a consequence, might not be considered by the public as indicia of indentification ...." *Id.* A common source of evidence on genericness is the dictionary. *Gimix, Inc. v. JS & A Group, Inc.,* 699 F.2d 901 (7th Cir.1983). For in-

stance, the court in *Miller Brewing Co. v. G. Heileman Brewing Co.,* 561 F.2d 75 (7th Cir.1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978), relied heavily upon the dictionary to find that "light" or "lite", was a generic term in relation to low-calorie beer. *See* 561 F.2d at 80–81. The *Miller* court also noted that the court is entitled to take judicial notice of common usage of the English language to determine whether a use is generic. *Id.*

■■■ In the instant case, the dictionary shows that "team" is a generic term. Its primary meaning is as a noun designating "a number of persons associated together in work or activity." Webster's Ninth New Collegiate Dictionary, 1983. Accordingly, "team" may not be protected as a trademark unless it, either by itself or in conjunction with other words or symbols, has acquired a secondary meaning. Furthermore, even if a generic word *has* acquired secondary meaning through use in conjunction with a specific mark, others may continue to use the word in a manner that conveys its primary meaning. *See Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4 (2d Cir.1976); *Stephen F. Whitman & Son, Inc. v. Christy Cosmetics, Inc.,* 140 F.2d 1001 (C.C.P.A.1944); *John Morrell & Co. v. Hauser Packing Co.,* 20 F.2d 713 (9th Cir.1927). Team Central's rights to the marks "Team" and "Team Electronics" do not prevent others from using the word "team" in its primary or generic sense.

Team Central contends, however, that the test for genericness requires consideration of more than just the dictionary definition. It argues that direct evidence of what the public understands by use of the term "Team Xerox" is necessary. It asserts that the documented instances of public confusion as to whether Team Central and Xerox are related is evidence that Xerox is using "Team Xerox" as a trademark, i.e., to identify the source of its products.

■■■ Team Central's argument does not recognize that evidence of public understanding is not an issue of fact in the case

of a common word used in accordance with its accepted meaning.[3] *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 905 (7th Cir. 1983); *Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 995 (7th Cir. 1979). For example, while "Apple" is a distinctive mark as applied to computers, the word "apple" can be used by anyone in association with the fruit "apple". Even if persons could be found to testify that every time they saw "apple" as applied to apples they formed the impression that the seller was somehow connected with Apple Computer, such testimony would not prevent a finding that "apple" was used generically. "Once a term is proven to be generic, evidence of purported buyer association of the term with a single source will not change the result." McCarthy, *Trademarks and Unfair Competition*, § 12:15 (2d Ed.1984).

In the instant case, the record shows that "team" is being used by Xerox in its generic sense. Team Central has conceded that Xerox properly uses the word "team" in its primary dictionary sense when ads refer to a team of Xerox employees or the fundamental concept of teamwork. It argues, however, that Xerox strays from this definition when it includes machines.

The court is unpersuaded that the dictionary definition must be adhered to so literally when the central idea of teamwork—a togetherness, pulling toward one goal—albeit by a team which includes machines, is present.[4] The majority of Xerox's ads specifically define its use of "team" in the text. For example:

[W]e've created TEAM XEROX. A team of people and office machines, all working together....

. . . .

Team Xerox, a wide array of products, people and services to help meet all your information needs.

In addition, the generic use of team is further emphasized by the frequent use of athletics as a background or by reference to athletic themes, such as winning. Team Central itself pointed to the connection between the "Team Xerox" campaign and the summer and winter Olympics. Xerox focused its advertising campaign on those games and this concentration further demonstrates the generic use of "team".

Team Central has also conceded that "The Xerox Team" is a generic use of "team". Such a concession makes it difficult to assert that "team" loses its generic definition merely by its placement, especially when the "team (proper name)" format is commonly used in business and athletics to connote a team effort or approach. Furthermore, the letter of Team Central's attorney suggests that it recognizes that some uses of the "team (proper name)" format are generic. Team Central argues that the advertising person who created the "Team Xerox" campaign has testified that the "team (proper name)" format was not widely accepted in the United States at the beginning of the "Team Xerox" campaign. While Robert Cox admitted that the format was derived mainly from European athletic usage, he also stated that he had seen the format used here, as in "Team Nike". Depo. of Robert Cox at p. 45. Xerox has also submitted affidavits and advertisements containing examples of other sports teams, such as "Team U.S.A.", "Team Canada", "Team America", "Team New Canaan", and "Team Nabisco".

In addition, Xerox has shown extensive use of the "team (proper name)" format by businesses to connote a team effort. Team Central argues that the examples of federal trademark registrations are inconclusive because the word "team" is not disclaimed. Section 6 of the Lanham Act, 15 U.S.C. § 1056, however, makes a disclaimer dis-

---

**3.** Evidence of public understanding may be critical to determine whether a coined word for a commercial product has degenerated from trademark status into a generic term. Team Central is not alleging such a pattern in this case.

**4.** The dictionary defines teamwork as "work done by several associates with each doing a part but all subordinating personal prominence to the efficiency of the whole." Webster's New Collegiate Dictionary, 1977.

cretionary.[5] Team Central also argues that many of these "team (proper name)" format exhibits are inconclusive because they occurred at a date after the "Team Xerox" campaign began and refer to businesses outside the area of electronics and computer sales. Priority and field of use arguments are not pertinent to the issue of whether the "team (proper name)" format is used generically. Even assuming *arguendo* that priority is relevant to genericness, many of Xerox's exhibits show first use dates prior to introduction of "Team Xerox". *See* Xerox's Memorandum in Support of Motion for Summary Judgment, Appendix A. The numerous third party use of the "team (proper name)" format shows the wide-spread and well-accepted use of "team" to connote a team approach in the traditional sense.

The record also demonstrates that Xerox uses the "Team Xerox" logo in a manner consistent with the dictionary definition. The fact that Xerox may be using "team" in conjunction with "Xerox" as a service mark does not alter its primary meaning. The Lanham Act specifically provides that a registrable mark may contain a generic and therefore unregistrable component. 15 U.S.C. § 1056. Courts have long recognized the use of generic terms in connection with a valid trade or service mark. *M.B.H. Enterprises, Inc. v. Woky, Inc.*, 633 F.2d 50 (7th Cir.1980); *Jean Patou, Inc. v. Jacqueline Cochran, Inc.*, 312 F.2d 125 (2d Cir.1963); *Dixie-Cola Laboratories, Inc. v. The Coca-Cola Co.*, 117 F.2d 352 (4th Cir.1941), *cert. denied*, 314 U.S. 629, 62 S.Ct. 60, 86 L.Ed. 505 (1941). The "Team Xerox" logo is merely a shorthand way to communicate the primary meaning of a group of people, machines, and services all working to meet the customer's information needs.

Team Central has raised other factual issues concerning the policies of Xerox's trademark attorney and the sophistication of computer purchasers. The court need not address these issues because they are immaterial to the primary issue of genericness.

In light of the dictionary definition of "team", Xerox's specific definition of "Team Xerox" in accordance with this common meaning within the majority of its ads, the concessions by "Team Central" that certain uses are permissible, the extensive third party use of the "team (proper name)" format, and the court's entitlement to take judicial notice of commonly-accepted English usage, the court finds as a matter of law that Xerox's use of the word "team" is not an infringement of Team Central's trademark rights. Since the use of "team" in its ordinary dictionary meaning is a defense to Team Central's claims of trademark dilution, unfair competition and deceptive trade practices, Xerox has demonstrated that summary judgment is appropriate on every count.

### ORDER

Accordingly, based upon the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that the motion of Xerox Corporation for summary judgment in its favor is granted and the amended complaint of Team Central Incorporated is dismissed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**5.** To be sure, the patent office has the right to force the trademark applicant to make such a disclaimer, but the patent examiners are not always consistent.