**LIQUID CONTROLS CORPORATION,**
Plaintiff-Appellant,

v.

**LIQUID CONTROL CORPORATION,**
Defendant-Appellee.

No. 85–2620.

United States Court of Appeals,
Seventh Circuit.

Argued May 6, 1986.

Decided Sept. 30, 1986.

James N. Videbeck, Patnaude Batz & Videbeck, Oak Brook Terrace, Ill., for plaintiff-appellant.

Daniel A. Boehnen, Allegretti Newitt Witcoff & McAndrews, Ltd., Chicago, Ill., for defendant-appellee.

Before CUDAHY and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUDAHY, Circuit Judge.

Plaintiff Liquid Controls Corporation ("Liquid Controls") sued defendant Liquid Control Corporation ("Liquid"), alleging violations of the Lanham Act and the Illinois law of unfair competition and deceptive trade practices. The district court granted the defendant's motion for summary judgment. We affirm.

I

Plaintiff Liquid Controls is an Illinois corporation, with its principal place of business in Illinois, that manufactures and sells meters for measuring the flow of liquids. It has used "Liquid Controls" both as its corporate name and to identify its products since 1956. Plaintiff obtained federal trademark protection for the term "Liquid Controls" in April 1984. Defendant is an Ohio corporation with its principal place of business in Ohio. It manufactures and sells precision devices that dispense and mix liquids and has used the name "Liquid Control" on these products since 1973.

Plaintiff filed a complaint in district court alleging that defendant had willfully infringed its registered trademark in the name "Liquid Controls," in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114(1); had willfully caused consumer confusion by leading the public to believe that plaintiff made defendant's product, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and had engaged in unfair

competition and deceptive trade practices in violation of Illinois law. After limited discovery, the defendant moved for summary judgment "on the ground that the term is generic and commonly descriptive with respect to plaintiff's goods, such that plaintiff is not entitled to prevent defendant's use of a similar name. This motion, if granted, would be entirely dispositive of the litigation." Defendant's Memorandum in Support of Motion for Summary Judgment, Appendix at 17. The district court granted the motion, finding "that the term liquid control or liquid controls defines a class of goods which the plaintiff manufactures and sells and is a common descriptive or generic term," *Liquid Controls Corp. v. Liquid Control Corp.*, No. 84–C–9303 (N.D.Ill. Aug. 21, 1985) ("District Court Opinion"), at 3 [Available on WESTLAW, DCTU database], and that therefore the trademark was not enforceable against defendants. Plaintiff appeals, arguing that there is a genuine issue of material fact as to whether the phrase "liquid controls" is a generic term and that even if it is a generic term, that circumstance is not dispositive of its section 43(a) claim and state law claims.

II

■■ A generic or common descriptive term can never function as a trademark. *See Technical Publishing Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136, 1139 (7th Cir.1984); *Miller Brewing Co. v. Joseph Schlitz Brewing Co.*, 605 F.2d 990, 994 (7th Cir.1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980). On the other hand, a term that is merely descriptive may be used as a trademark if it has acquired secondary meaning. Thus in considering plaintiff's section 32[1] claim, the

---

1. Section 32 provides:

   Any person who shall, without the consent of the registrant—
   (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection

   with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
   (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale,

crucial question is whether there is a genuine issue of material fact as to whether "liquid controls" is a generic or a merely descriptive term. The district court held that "liquid controls" is a generic term because it defines a class of goods that the plaintiff manufactures and sells.

> The noun "control" is defined in Webster's Third New International Dictionary (1967 Ed.) as an "automatic mechanism used to regulate or guide the operation of a machine or an apparatus system." Substantially the same definition is contained in the Random House Dictionary, Unabridged Edition (1967). Adding the word "liquid" to the word "control" or "controls" is merely a restriction defining the type of controls manufactured and sold by the parties and make the term more rather than less descriptive of the goods, in our opinion. Defendant has also produced copies of three patents using the term "liquid controls" (Brief, p. 5, Exhibit C–E).

District Court Opinion at 3.

■ A generic term is one that is commonly used as the name of a kind of goods. *See A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903, 906 (7th Cir.1986); *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 905 (7th Cir.1983); *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir.1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978). Unlike a trademark, which identifies the source of a product, a generic term merely specifies the genus of which the particular product is a species. *See Gimix*, 699 F.2d at 905; *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976). Because a generic term is one commonly used to denote the product, a common source of evidence is the dictionary. *See Gimix*, 699 F.2d at 905, 906; *Miller*, 561 F.2d at 80–81.

■ A merely descriptive term is one that specifically describes a characteristic

or an ingredient of a product. *Canfield*, at 906; *Gimix*, 699 F.2d at 906; *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366, 378 (7th Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). Merely descriptive terms are generally not protectible as trademarks "both because they are poor means of distinguishing one source of services from another and because they are often necessary to the description of all goods or services of a similar nature." *M.B.H. Enterprises, Inc. v. WOKY, Inc.*, 633 F.2d 50, 54 (7th Cir.1980); *see Gimix*, 699 F.2d at 906.

■ Plaintiff is correct that its registration must be taken as prima facie evidence that "liquid controls" is not a generic term. The Lanham Act provides that:

> a mark registered on the principal register ... shall be prima facie evidence of registrant's exclusive right to use the registered mark in commerce on the goods or services specified in the registration subject to any conditions or limitations stated therein, but shall not preclude an opposing party from proving any legal or equitable defense or defect which might have been asserted if such mark had not been registered.

15 U.S.C. § 1115(a). This section entitles the plaintiff to a presumption that its registered trademark is not merely descriptive or generic, or, if merely descriptive, is accorded secondary meaning. *See Union Carbide*, 531 F.2d at 378; J. McCarthy, *Trademarks & Unfair Competition* § 11:16 (2d ed. 1984). This presumption may, of course, be overcome by proof of descriptiveness, or by proof of genericness. J. McCarthy, *Trademarks & Unfair Competition* § 11:16 (2d ed. 1984); *see, e.g., Vision Center v. Opticks, Inc.*, 596 F.2d 111, 119 (5th Cir.1979), *cert. denied*, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980); *Educational Development Corp. v. Economy Co.*, 562 F.2d 26, 28 (10th Cir. 1977). The burden is on the defendant to overcome the presumption. *See Coca-Cola*

---

distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action

by the registrant for the remedies hereinafter provided....

15 U.S.C. § 1114(*l*).

*v. Overland, Inc.*, 692 F.2d 1250, 1254–55 (9th Cir.1982); *Reese Publishing Co. v. Hampton International Communications*, 620 F.2d 7, 11 (2d Cir.1980). Thus in the case before us the burden is on the defendant not only to overcome whatever presumption of nongenericness exists, but also to show that there is no genuine issue of material fact as to genericness.[2]

■ The evidence presented by the defendant consists largely of dictionary defi-nitions. The noun "control" is defined in Webster's Third New International Dictionary (1967 ed.) as an "automatic mechanism used to regulate or guide the operation of a machine or an apparatus or system."[3] When "liquid"[4] is added to "controls" the effect is to identify the type of mechanism, thus identifying a genus of products.[5]

Plaintiff's reply to the everyday, dictionary understanding of the term "liquid con-

2. Plaintiff seems to argue that the registration of the term is evidence of nongenericness and therefore raises a genuine issue of material fact that prevents summary judgment. We believe, however, that the presumption "bursts" once the defendant presents sufficient evidence of gener-icness and thus cannot in itself prevent the grant of summary judgment in this case.

3. The complete entry for the noun "control" is as follows:

**1a:** the act or fact of controlling (man's in-creasing—over nature): power or authority to guide or manage: directing or restraining do-mination (under parental—) (the car went out of—on a curve) **b:** effective and reliable skill in the use of a tool, instrument, technique or artistic medium (have—of several languages) (the singer's—of her voice was perfect) (a poet's—of a variety of metrical forms) (a base-ball pitcher needs—as well as speed) **c:** regu-lation or direction in the use or application of an artistic medium resulting in proportion and appropriate emphasis **d:** reduction or regulation of wildlife population of an area by killing **e:** the regulation of economic activity esp. by government directive (price—s) (wage —) (rent—)—usu. used in pl. **f:** application of policies and procedures for directing, regulat-ing, and coordinating production, administra-tion, and other business activities in a way to achieve the objectives of the enterprise **2: RE-STRAINT, RESERVE (—of the passions): SELF-RESTRAINT:** possession and com-mand of one's faculties (her hands wrung pale in effort at——Amy Lowell) **3:** a means or method of controlling: one that controls or determines: as **a:** something that affords a standard of comparison or means of verifica-tion (as an organism, culture, or group in a control experiment): **CONTROL EXPERI-MENT** (half the dogs were injected, the others reserved as a—) (a—group) **b:** a hand-operat-ed or automatic mechanism used to regulate or guide the operation of a machine or an apparatus or system (as a steam shovel, a radio, a heating system)—usu. used in pl. **c:** a system of relatively precise field measure-ments (as a traverse or a triangulation sys-tem) with which local secondary surveys may

be tied in to ensure their essential accuracy **d:** a personality or spirit believed to actuate the utterances or performances of a spiritualist medium **e:** any of the physical factors (as latitude, attitude, ocean currents) determining the climate of a place **f:** any of the factors determining the nature of geological forma-tions at a given place **g:** a recording device in the form of a letter or number or combina-tion of letters and numbers in the margin of a sheet of British stamps printed between 1887 and 1948 **h:** a control mark on a stamp.

4. Liquid, as a noun, is defined as **"1:** a liquid substance—compare **GAS, SOLID 2:** a liquid consonant." Webster's Third New International Dictionary (1967 ed.).

5. Plaintiff argues that "liquid controls" is not a generic term because it has a number of differ-ent meanings. *See Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 906 (7th Cir.1983) (holding that the "auto page" was susceptible of multiple interpretations and thus could not be subject to any common public understanding). Plaintiff, however, has not presented any alternative meanings to this court. *See Technical Publish-ing Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136, 1141 (7th Cir.1984) ("software news" does not possess the abundance of meaning that "auto page" possesses). Rather, it has merely argued that there are numerous different meanings as a matter of mathematical possibility because each definition of "control" can be paired up with each definition of "liquid." Plaintiff's argument is insufficient. We did not hold the phrase "auto page" to be nongeneric merely because it was mathematically possible to obtain numer-ous pairings between definitions for "auto" and for "page." Rather, we held "auto page" to be nongeneric because the phrase was plausibly capable of identifying a number of different products, including a device to activate an alarm when a car is broken into and a machine that connects an answering service to a paging system. *Id.* at 906. In the case before us "liq-uid controls" does not plausibly identify such a wide range of products. When "liquid" modi-fies "controls" the alternative definitions of con-trol become implausible.

trols" is twofold. First, plaintiff argues that the term is not generic because "liquid controls" is not found in the dictionary. Second, plaintiff argues that breaking a composite trademark up into parts is improper. As to the first argument, it should suffice to mention that numerous terms have been found to be generic despite their absence from the dictionary. *See, e.g., Technical Publishing Co. v. Lebhar-Friedman, Inc.,* 729 F.2d 1136 (7th Cir.1984) ("software news" probably generic); *National Conference of Bar Examiners v. Multistate Legal Studies,* 692 F.2d 478 (7th Cir.1982) ("multistate bar examination"), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *Miller Brewing Co. v. G. Heileman Brewing Co.,* 561 F.2d 75 (7th Cir.1977) ("light beer"), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978); *see also* J. McCarthy, *Trademarks and Unfair Competition* § 12:3 (2d ed. 1984) (listing other generic terms, including "bag rack," "barrier bag," "body soap," "export soda," "multipoint data service," "rubber rope," "shredded wheat" and "work wear").

■ Plaintiff's second argument, that a composite trademark should not be broken into its component parts in determining whether it is generic, is also disposed of easily. This circuit has noted: "Dissecting marks often leads to error. Words which could not individually become a trademark may become one when taken together." *Union Carbide Corp. v. Ever-Ready Inc.,* 531 F.2d 366, 379 (7th Cir.1976), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). Certain terms may connote more than the sum of their parts and we must take care to decide the genericness of these terms by looking to the whole. For example, the mark "sugar & spice" on bakery products was held to be not merely descriptive, even though both "sugar" and "spice" are descriptive of the products. *See In re Colonial Stores, Inc.,* 394 F.2d 549 (C.C.P.A.1968). Other composite terms

are nothing more than the sum of their parts, such as "multistate bar examination" and "light beer." "Liquid controls" falls in the latter category. In any case, we do not believe that the principle that the validity of a mark is to be determined by looking at the mark as a whole precludes a court from examining the meanings of the component words in determining the meaning of the mark as a whole.

Defendant has also introduced other evidence tending to show that "liquid controls" is a generic term, notably three patent applications that use the term to designate various mechanisms for controlling the flow of a liquid or the level of a liquid in a chamber. Plaintiff argues that these patents prove nothing because it does not sell the particular devices described. We believe that this distinction is irrelevant. The devices described in the patents would appear to fall within the same genus as the devices sold by plaintiff—they are all devices to measure and control liquids.

Plaintiff argues that it has produced enough evidence to show that there is a genuine issue of fact. Plaintiff refers to its trademark registration. Defendant has, however, introduced enough evidence of the genericness of the term "liquid controls" to "burst" the presumption created by section 1115(a). Thus plaintiff cannot rely on that presumption to defeat the motion for summary judgment. The presumption really serves only to shift the burden of production to the defendant.

Plaintiff also argues that it has produced evidence of nongenericness by 1) showing that no trade publications, trade shows or trade associations use "liquid controls" in their names; 2) showing that, of the companies listed in The Thomas Register (an industrial trade directory), only the plaintiff and defendant have similar names; 3) showing that defendant did not use "liquid controls" in a generic sense in two of its advertisements.[6] Although we appreciate

---

**6.** Plaintiff argues that affidavits from its customers, stating that "liquid controls" has acquired the meaning of meter and meter-related

products produced only by plaintiff, demonstrate the nongenericness of "liquid controls." While these affidavits address the issue of sec-

the difficulties of proving a negative, we believe that this "evidence" simply does not raise a genuine issue of fact.

## III

Plaintiff argues that even if its trademark is generic, it may still be entitled to relief under section 43(a) of the Lanham Act.[7] That section provides:

Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a).

■ In *Miller Brewing Co. v. Joseph Schlitz Brewing Co.*, 605 F.2d 990, 997 (7th Cir.1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980), we held that if a term was generic, use of that term alone could not give rise to an unfair competition claim, even if many people had come to associate the term with the plaintiff. *See Miller Brewing Co. v. Falstaff Brewing Corp.*, 655 F.2d 5, 7 (1st Cir.1981) ("Under no circumstances is a generic term susceptible of *de jure* protection under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) or under the law of unfair competition.") We implied, however, that an unfair competition claim might be supportable if consumer confusion or a likelihood of consumer confusion arose from the failure of the defendant to adequately identify itself as the source of the product. *Miller*, 605 F.2d at 997. Thus section 43(a) may not protect the use of a term unless that term is sufficiently distinctive to warrant protection as a trademark, even if some confusion results, but may offer protection against "passing off." In *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604 (7th Cir.1986), we held that the defendant's use of a similar format in a yellow-pages advertisement was not protected under section 43(a) even though the similarity created some confusion because some customers may have called the defendant thinking they were calling the plaintiff.

There may be some confusion from S.O.S.'s use of a similar location box, but confusion is endemic to consumer markets; and a court doesn't even reach the question of likelihood of confusion until persuaded that the putative mark is sufficiently distinctive to warrant prima facie protection as a trademark.

*Blau Plumbing*, 781 F.2d at 610. *Technical Publishing Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136 (7th Cir.1984), in which we recognized that section 43(a) of the Lan-

---

ondary meaning, they do not appear to address the issue whether "liquid controls" is a generic term in the mind of the public. *See Team Central Inc. v. Xerox Corp.*, 606 F.Supp. 1408, 1414 (D.Minn.1985). In any event, these affidavits were not introduced in the district court and thus can not properly be considered by us.

Plaintiff further argues that the affidavit of its vice-president is evidence of nongenericness. The affidavit also only addresses the issue of secondary meaning. Plaintiff argues that affidavit states that the *factual portion* of the Plaintiff's Memorandum In Opposition to Defendant's Motion for Summary Judgment is true and that the Memorandum states that "liquid con-

trols" is not the name of "any identifiable items, groups of items or any recognized fields of activity in which the Plaintiff, or for that matter the Defendant, are engaged," which is relevant to the determination of genericness. The problem with plaintiff's argument is that the statement quoted does not appear in the factual portion of the Memorandum, but rather in the "Introductory Statement," and thus is not incorporated into the affidavit.

7. If Counts I and II, based on the Lanham Act, are dismissed, Count III, which is based on state law and is not pleaded as a distinct diversity case, should also be dismissed.

ham Act might "conceivably" apply if there was confusion even though the term "software news" was generic, is not to the contrary. In *Lebhar-Friedman* we reasoned that the defunct Chicago Daily News would probably have a meritorious claim "if another publication with similar content directed to the same reading public with a substantially identical format had appeared in the scene belatedly." *Id.* at 1142. Thus our concern in that case seems to be directed towards passing off, not confusion generated by the mere similarity of names. In the case before us the only evidence of confusion is occasional misdirected mail. This confusion would seem to arise merely because of the similarity of names. Section 43(a) does not protect the plaintiff from this sort of confusion.

■ We do not believe that plaintiff has alleged or shown evidence of confusion resulting from anything other than the similarity of names.[8] We do not think that there is any evidence of passing off. Passing off is a type of fraud. We have defined it as trying to get sales from a competitor by making consumers think that they are dealing with that competitor, when actually they are buying from the passer off. *See Blau Plumbing*, 781 F.2d at 611. Copying is not necessarily passing off. *Id.* When the term copied is descriptive, copying is consistent with an inference that the copier wanted merely to inform consumers about the properties of its own product. *Id.* Further, any confusion as to the source of the product would seem to be

minimized to the extent that defendant does not sell precisely the same products as plaintiff.[9]

Plaintiff relies largely on *Metric & Multistandard Components Corp. v. Metric's, Inc.*, 635 F.2d 710 (8th Cir.1980). In *Metric*, however, the confusion did not arise merely from the use of a similar name, but from the fact defendant's catalogues "were nearly exact copies of appellee's sales materials." *Id.* at 714. Thus the defendant was in effect falsely describing the origin of the goods sold. *Id.* In the case before us plaintiff has not presented evidence of conduct similar to Metrics' conduct. Plaintiff also cites *King-Seeley Thermos Co. v. Aladdin Industries, Inc.*, 321 F.2d 577 (2d Cir.1963) and *DuPont Cellophane Co. v. Waxed Products Co.*, 85 F.2d 75 (2d Cir. 1936), *cert. denied*, *E.I. DuPont de Nemours & Co. v. Waxed Products Co.*, 299 U.S. 601, 57 S.Ct. 194, 81 L.Ed. 443 (1936) and *cert. denied*, *E.I. DuPont de Nemours & Co. v. Waxed Products Co.*, 304 U.S. 575, 58 S.Ct. 1047, 82 L.Ed. 1539 (1938), as cases in which the courts acted to offer some protection to a generic term. In these cases a formerly exclusive trademark right had been lost because the name had become generic, and the court required a latecomer using that word to state the source of the product. *See Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 997 (7th Cir.1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980). These cases are thus distinguishable.[10]

8. Count II of plaintiff's complaint alleges that defendant:

> has been, and is using the mark "LIQUID CONTROL" for its corporate and divisional names and in connection with its businesses and its aforesaid products and services in interstate commerce. This mark has been copied and appropriated from plaintiff for the unlawful purpose of causing confusion, or mistake or to deceive the public into falsely believing that defendant's products and services emanate from plaintiff or are otherwise associated with plaintiff, and such acts have caused a likelihood of confusion, mistake and deception, all to plaintiff's irreparable injury and defendant's benefit.

Complaint ¶ 14.

9. Plaintiff argues that the defendant placed its name in *The Thomas Register*, an industrial trade directory, under the heading "volumetric meters," which plaintiff sells but defendant does not. It is difficult to see how this could be evidence of passing off. If defendant does not sell such meters it can hardly be accused of trying to get volumetric meter sales from consumers by misleading consumers as to the source of the product.

10. Although we base our holding on our analysis of section 43(a), we note that the plaintiff's argument here for reversal meets with another objection. The district court invited the plaintiff to amend its pleadings if it thought that summary judgment could be granted with re-

For the reasons stated above, we affirm the district court's grant of summary judgment for defendant.

spect to Count I but not on the other counts. Plaintiff did not attempt to amend its pleadings. Hence we may assume that the plaintiff has conceded that if summary judgment is granted on the first count it must be granted as to all counts. At oral argument plaintiff claimed that it did not pursue the issue in the district court because the docket was closed on August 31 and no new judge was assigned to the case when the original judge retired from the bench. Plaintiff, however, did not include this argument in its brief.