The GOLF WAREHOUSE,
L.L.C., Plaintiff,

v.

GOLFERS' WAREHOUSE,
INC., Defendant.

No. 00–1412–JTM.

United States District Court,
D. Kansas.

March 26, 2001.

Jay F. Fowler, Jim H. Goering, Foulston & Siefkin L.L.P., Wichita, KS, Sheri J Engelken, Alexandra N DeNeve, Kirkland & Ellis, Chicago, IL, Mia Higgins, Kirkland & Ellis, New York, NY, for plaintiff.

Alexander B. Mitchell, II, Klenda, Mitchell, Austerman & Zuercher, L.L.C., Wichita, KS, for defendant.

## MEMORANDUM AND ORDER

MARTEN, District Judge.

This matter comes before the court on plaintiff's motion for summary judgment and defendant's motion for preliminary injunctive relief in this declaratory judgment action involving a dispute over plaintiff's allegedly infringing use of defendant's registered trademark "Golfers' Warehouse." The motions are fully briefed and ripe for determination. Additionally, the court held a hearing on these motions on March 14, 2001. The court has considered all of the pleadings and evidence received at the hearing. For the reasons set forth below, the court grants plaintiff's motion for summary judgment on all claims and counterclaims and denies defendant's motion for preliminary injunctive relief:

### I. Factual Background

Plaintiff is an online retailer of golf equipment and accessories, including clubs, balls, bags, apparel, shoes, training aids, books, and videos. It operates from a warehouse store in Wichita, Kansas, but virtually all of plaintiff's sales are through online transactions at its website, which the public can access at both <<www.tgw.com>> and <<www.thegolfwarehouse.com>>. Plaintiff has recognized significant growth of online sales since the launch of its website in April 1998.

Defendant operates four golf specialty stores under the name "Golfers' Warehouse" in Connecticut and Rhode Island. In 1987, defendant obtained federal trademark registration for the term "Golfers' Warehouse," U.S. Reg. No. 1,470,047. During the registration process, the Patent and Trademark Office ("PTO") examiner contended that "Golfers' Warehouse" was descriptive. The PTO thus required defendant to disclaim all rights to the term "golfers" before receiving registration.

Defendant does not currently engage in any on-line retail transactions and does not have any definitive plans to do so. However, it is actively considering opportunities which arise to enter into the e-commerce marketplace through the acquisition of another entity with e-commerce experience and infrastructure. Additionally, defendant has obtained the domain name rights to "<<www.golferswarehouse.com>>."

In September 2000, defendant initiated contact with plaintiff by demanding that plaintiff cease and desist from infringing on defendant's mark. Plaintiff rejected this request and asserted that defendant's mark was generic and unprotectable. On October 6, 2000, plaintiff filed this action seeking a declaratory judgment that plaintiff had not infringed on defendant's mark in violation of 15 U.S.C. § 1114, had not made a false designation of origin in violation of 15 U.S.C. § 1125(a), had not violated the Kansas Consumer Protection Act, had not engaged in unfair competition, and that defendant's mark is generic. Defendant answered and asserted counterclaims of trademark infringement, false designation of origin, and cybersquatting under 15 U.S.C. § 1125(d).

### II. Summary Judgment Standards

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all of the evidence in a light most favorable to the opposing party. *Jurasek v. Utah State Hosp.*, 158 F.3d 506, 510 (10th Cir. 1998). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a rea-

sonable doubt. *Baker v. Board of Regents,* 991 F.2d 628, 630 (10th Cir.1993). The moving party need not disprove the non-moving party's claim or defense; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir.1987).

Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). The opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the opposing party must come forward with significant admissible probative evidence supporting that party's allegations. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III. Discussion and Analysis on Summary Judgment

The only issue before the court is whether defendant's registered mark, "Golfers' Warehouse," U.S. Reg. No. 1,470,047, is generic. Plaintiff contends that the mark is generic and thus unprotectable. Defendant contends that the mark is either descriptive or suggestive, both of which entitle it to the full spectrum of trademark protection.

■ Initially, defendant points out that its mark is incontestible pursuant to 15 U.S.C. § 1065. The court agrees with this evaluation. Once a mark has attained incontestible status, then its registration becomes "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b). However, an incontestible registration is subject to cancellation if the mark "becomes the generic name for the goods or services, or a portion thereof, for which it is registered." 15 U.S.C. § 1064. Because a trademark's certificate of registration establishes the presumption that the trademark is valid, see 15 U.S.C. § 1057(b), a party seeking cancellation of a registration on the ground that the mark has become generic carries the burden of proving that fact by a preponderance of the evidence.

■ Trademark protection falls into one of four categories or terms: (1) generic; (2) descriptive; (3) subjective or (4) arbitrary or fanciful. *First Savings Bank, F.S.B. v. First Bank System,* 101 F.3d 645, 654 (10th Cir.1996). Only the first category is of concern in this case. A generic term is a term used to describe the relevant type or class of goods. Because a generic mark refers to a general class of goods, it does not indicate the particular source of an item. Consequently, such a mark receives no legal protection and may not be registered alone as a trademark. As the court explained in *Best Buy Warehouse v. Best Buy Co. Inc.,* 751 F.Supp. 824 (W.D.Mo.1989), aff'd 920 F.2d 536 (8th Cir.1990):

> The test for deciding whether a word is generic is one of buyer understanding: "What do the buyers understand by the word for whose use the parties are contending?" *WSM, Inc. v. Hilton,* 724 F.2d 1320, 1325 (8th Cir.1984). Any competent source, including dictionaries, newspapers, consumer surveys, advertisements, and other publications, may

provide evidence of the public's understanding of the term at issue. *In re Northland Aluminum Products, Inc.,* 777 F.2d 1556, 1559 (Fed.Cir.1985). *Id.* A starting place is the dictionary definition. However, while evidence of the dictionary definition is "appropriate and relevant evidence," *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.,* 494 F.2d 3, 11 n. 5 (5th Cir.1974), it is not dispositive. *Security Center, Ltd. v. First Nat'l Sec. Centers,* 750 F.2d 1295, 1298 n. 4 (5th Cir.1985) ( "Dictionaries lag behind linguistic realities, . . . so the dictionary test may be of questionable validity in many instances."); *Liquid Controls Corp. v. Liquid Control Corp.,* 802 F.2d 934, 938 (7th Cir.1986) (many terms found generic despite their absence from dictionaries).

Similarly, in determining whether a term is generic, courts have often relied upon the "who-are-you/what-are-you" test: "A mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the generic name of the product answers the question 'What are you?'" *Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1391 (9th Cir.1993) (quoting 1 J. Thomas McCarthy, Trademarks and Unfair Competition § 12.01 (3d ed.1992)). Recognizing that a given mark may answer both questions simultaneously, Congress has directed that the primary significance test is the criteria the court should employ to determine genericness. See 15 U.S.C. § 1064(3):

> A registered mark shall not be deemed to be the generic name of goods or services solely because such mark is also used as a name of or to identify a unique product or service. The primary significance of the registered mark to the relevant public rather than purchaser motivation shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used.

*Id.*

■ The key, in the present context, is to recognize that a particular mark can represent both a particular retailer and a genus of retail stores. The court must ascertain the primary significance of that mark to the consumer and determine whether the mark primarily answers the question "who are you" versus "what are you." It follows from this that "[i]f the primary significance of the trademark is to describe the type of product rather than the producer, the trademark has become a generic term and is no longer a valid trademark." *Anti–Monopoly, Inc. v. General Mills Fun Group,* 611 F.2d 296, 304 (9th Cir.1979).

■ Given that the present term is a compound mark, the court must note that "if the components of a trade name are common descriptive terms, a combination of such terms retains that quality." *National Conference of Bar Examiners v. Multistate Legal Studies, Inc.,* 692 F.2d 478, 488 (7th Cir.1982); *In re Gould Paper Corp.,* 834 F.2d 1017, 1018 (Fed.Cir.1987). The court must determine the validity of a mark by looking at the mark as a whole. It should not fragment a composite mark into its various pieces. The Court of Appeals for the Seventh Circuit has indicated that "[d]issecting marks often leads to error." *Liquid Controls Corp. v. Liquid Control Corp.,* 802 F.2d at 934 (7th Cir. 1986).

The court recognizes that other courts have held generic retail store names involving "warehouse." See *Mil–Mar Shoe Co. v. Shonac Corp.,* 75 F.3d 1153, 1159 (7th Cir.1996) (holding "Warehouse Shoes" to be generic); *Warehouse Foods, Inc. v. The Great Atlantic & Pacific Tea Co.,* 223 USPQ 892, 893 (N.D.Fla.1984) (holding

"Warehouse Foods" to be generic). However, neither of these cases provides clear authority for the determination presently before the court. For instance, in Mil Mar, it is not clear that the Seventh Circuit considered the "primary significance" test in determining the generic status of "Warehouse Shoes." Further, consideration of a mark's status is necessarily a mark specific exercise. While Mil Mar and Warehouse Foods provide some guidance, the court must undertake a fresh examination of the proper trademark category for the mark "Golfers' Warehouse."

Because generic use implies use consistent with common understanding, courts often look to dictionaries as a source of evidence on genericness. Every dictionary examined by the court has essentially the same primary and secondary definitions for "warehouse." The primary definition is always some variation of "a building for the storage of goods, merchandise, etc." and the secondary definition generally includes "a large retail store." See, e.g., Webster's Third New International Dictionary 2576 (1993); Random House Unabridged Dictionary 2142 (2d ed.1993); The American Heritage Dictionary 2013 (3d ed.1992); New Webster's Dictionary 1119 (1981); Webster's II New College Dictionary 1245 (1999).

Defendant argues that the combination of the primary definition of warehouse with golf/golfers generates the incongruous image of golfers being kept in a large building for storage purposes or of golf being played therein. As such, defendant asserts that "Golfers' Warehouse" is a suggestive or descriptive term. The court does not agree with defendant's characterization. When members of the "relevant public" consider the term "Golfers' Warehouse" in the context of a retail environment, they do not conjure up images of golfers standing on shelves or of golf being played in a storage area. The "relevant public" must recognize the reference to the secondary meaning of "warehouse." Otherwise, no member of the golf-product consuming public would have any desire to enter the "Golfers' Warehouse." Additionally, trademark law does not in any way mandate that only the primary definition of a word can qualify as generic. The question is not whether defendant's use represents the most common use of the term "warehouse"; the appropriate question is whether defendant is using "Golfers' Warehouse" in a common or generic sense.

Plaintiff put on evidence of other retail stores using the "warehouse" name. Plaintiff's uncontested search revealed thirty-seven (37) such stores in the Wichita, Kansas area,[1] and eighteen such businesses in the Hartford, Connecticut area where defendant has its principal place of business.[2] A nationwide search for businesses using a name combining "golf/golfers" and "warehouse" revealed thirty-eight (38) such stores.[3] Plaintiff's search for companies using the term "warehouse" in combination with a word designating a type of apparel or sport revealed fifty (50) such business. An Internet domain name search for domain names including

---

1. These include such names as "Appliance Warehouse," "Automotive Warehouse," "Beauty Warehouse," "Bicycle Warehouse," "CD Warehouse," "Furniture Warehouse," etc.

2. These include such names as "Discount Carpet Warehouse," "Foreign Parts Warehouse," "Wholesale Radiator Warehouse," etc.

3. The list includes nine companies operating under the name "Golf Warehouse" as well a business unaffiliated with defendant using the name "Golfers Warehouse."

"golf/golfers" and "warehouse" resulted in thirty-seven (37) matches.[4]

Such widespread retail usage indicates that the "relevant public" commonly understands the term "warehouse" to apply to retail stores that sell a wide variety of products. When members of the "relevant public" consider the term "warehouse" in the retail environment, they generally expect high volume, discount prices, and a relatively large, sparsely decorated store. The primary significance of the term "warehouse" is thus a generic denotation of a particular type of retail store. The significant scope of the nationwide use of some combination of "golf/golfers" and "warehouse" by potential competitors in the golf retail industry further supports the court's conclusion that the mark is generic.

■ As noted above, the court must evaluate the "genericness" of composite terms by looking at the term as a whole. *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d at 934. However, some composite terms "are nothing more than the sum of their parts." *Id.* at 938. The court finds that "Golfers' Warehouse" is just that. "Warehouse" is a generic term referencing a type of retail store and the addition of "Golfers" does nothing more than denote the products sold at the particular warehouse-type store. The primary significance of the mark in the minds of the "relevant public" is to denote the type of store that defendant operates, not the defendant's ownership thereof. In other words, the term "Golfers' Warehouse" primarily answers the question "What are you?" instead of "Who are you?" The court thus finds that "Golfers' Warehouse" is a generic term for a warehouse-type retail store that caters to the needs of golfers by selling golf supplies, equipment, etc. Further, the court finds that plaintiff has rebutted the registered mark's presumption of validity by establishing by a preponderance of the evidence that "Golfers' Warehouse" is generic.

The court grants summary judgment for plaintiff on the trademark infringement claim under 15 U.S.C. § 1114. A generic mark is not entitled to trademark protection. See *Primedia Intertec Corp. v. Technology Marketing Corp.*, 35 F.Supp.2d 809, 815 (D.Kan.1998). For the same reason, the court grants plaintiff summary judgment on the claim of common law unfair competition. *Id.* The court also grants plaintiff summary judgment on the false designation of origin claim under 15 U.S.C. § 1125(a) in that such a claim requires a protectable mark. See *Packerware Corp. v. Corning Consumer Prods. Co.*, 895 F.Supp. 1438, 1447 (D.Kan.1995).

■ Because use of a generic name cannot constitute a deceptive act, the court grants plaintiff summary judgment relative to any claim under the Kansas Consumer Protection Act. Finally, the court grants plaintiff summary judgment on defendant's counterclaim of cybersquatting under 15 U.S.C. § 1125(d)(1)(A). Cybersquatting requires that defendant's mark be distinctive or famous. See *Northland Ins. Cos. v. Blaylock*, 115 F.Supp.2d 1108, 1123 (D.Minn.2000). Because "Golfers' Warehouse" is generic, plaintiff's use of its domain names does not constitute cybersquatting. Finally, the court denies defendant's motion for a preliminary injunction because defendant has no probability of success on the merits.

IT IS THEREFORE ORDERED this day of March, 2001, that plaintiff's motion

---

**4.** The list includes closely related names such as "golferwarehouse.com," "golfersware-house.net," "golferswarehouseinc.com," and "thegolferswarehouse.com." All of these domain names are unrelated to defendant's business.

for summary judgment (dkt. no. 19) is granted and defendant's motion for preliminary injunction (dkt. no. 4) is denied.