**HARLEY–DAVIDSON, INC., Plaintiff–Appellee–Cross–Appellant,**

·v.

**Ronald GROTTANELLI, doing business as The Hog Farm, Defendant–Appellant–Cross–Appellee.**

**Docket Nos. 97–9446(L), 97–9464(XAP)**

United States Court of Appeals, Second Circuit.

Argued June 11, 1998.

Decided Jan. 15, 1999.

Peter K. Sommer, Buffalo, N.Y. (Joseph N. Del Vecchio, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N.Y., on the brief), for defendant-appellant.

Michael E. Husmann, Milwaukee, Wis. (Dyann L. Kostello, Katherine W. Schill, Michael, Best & Friedrich, Milwaukee, Wis.; Charles Sullivan, Sullivan & Gallion, New York, N.Y., on the brief), for plaintiff-appellee.

Before: NEWMAN, McLAUGHLIN, and PARKER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal primarily involves trademark issues as to whether the mark "HOG" as applied to large motorcycles is generic and whether a logo is insulated from an infringement claim as a permissible parody. These issues arise on an appeal by Ronald Grottanelli d/b/a The Hog Farm ("Grottanelli") from the October 1, 1997, judgment of the District Court for the Western District of New York (Edmund F. Maxwell, Magistrate Judge[1]), entered in a suit brought by Harley–Davidson, Inc. ("Harley–Davidson," "Harley," or "the company"). The judgment enjoins Grottanelli from using the word "hog" in reference to some of his products and services and from using his logo modeled on Harley–Davidson's bar-and-shield design mark; however, the injunction permits Grottanelli's continued use of the mark "THE HOG FARM" to identify his motorcycle service business within a geographically defined trading area. Harley–Davidson cross-appeals, contending that the Court should have narrowed the geographic area in which Grottanelli may use the mark "THE HOG FARM".

We affirm the judgment to the extent that it found Grottanelli liable for infringement of Harley–Davidson's bar-and-shield design mark and enjoined his future use of that mark. However, we conclude that the word "hog" had become generic as applied to large motorcycles before Harley–Davidson began to make trademark use of "HOG" and that Harley–Davidson's attempt to withdraw this use of the word from the public domain cannot succeed. We therefore affirm in part, reverse in part, and remand.

## Background

Harley–Davidson, a corporation based in Milwaukee, Wisconsin, manufactures and sells motorcycles, motorcycle parts and accessories, apparel, and other motorcycle-related merchandise. Two sets of Harley–Davidson's marks are at issue in this case: the word "hog," used either to refer to its motorcycles or to an officially sponsored bikers association, and its bar-and-shield logo.

### 1. The Word "Hog" Applied to Motorcycles

*Public use of the word "hog".* In the late 1960s and early 1970s, the word "hog" was used by motorcycle enthusiasts to refer to motorcycles generally and to large motorcycles in particular. The word was used that way in the press at least as early as 1965,[2] and frequently thereafter,[3] prior to the 1980s when Harley first attempted to make trademark use of the term. Several dictionaries include a definition of "hog" as a motorcycle, especially a large one.[4] The October 1975

---

1. By consent of the parties, the Magistrate Judge conducted all proceedings in this matter. *See* 28 U.S.C. § 636(c).

2. *See California: The Wild Ones*, Newsweek, March 29, 1965, at 25 ("The state wide clan [of Hells' Angels] has its own beat argot (sample: a 'hog' is a big motorcycle)...."); *Hell's Angels*, Saturday Evening Post, Nov. 20, 1965, at 37 ("Some angels can dismantle a motorcycle in two hours. When they get through tinkering with it, the hog is a lean, dangerous beast."); *see also* Hunter S. Thompson, *Hell's Angels* 97 (1967) ("A columnist for the *Los Angeles Times* once described hogs as 'the kind of cycle the German couriers used to run down dogs and chickens—and people—in World War II: low brutish machines, with drivers to match.' "). The earliest reference in the record to "hog" as referring to large motorcycles is the caption "Hog Heaven" in the June 1935 issue of *Popular Mechanics*. *See Time Machine*, Popular Mechanics, June 1995, at 16 (reprinting cover and caption of June 1935 issue).

3. *See, e.g.,* Outlaw Biker, May 1989, cover ("4,000 Find Hog Heaven at.... California Love Run"); Street Chopper, March 1975, at 10 ("HOG + $ = CHOPPER"); *see also* Easyriders, May 1982, advertisement for Denver motorcycle shop ("HAWG STUFF"). The Magistrate Judge noted seven exhibits showing the word "hog" or "hawg" referring generally to motorcycles.

4. *See The Oxford Dictionary of Modern Slang* (1992) ("hog noun U.S. A large, often old, car or motorcycle.1967 -."); *American Heritage Dictionary* (3d ed.1992) ("hog ... 4. *Slang.* A big, heavy motorcycle"); Eric Partridge, *A Dictionary of Slang and Unconventional English* (8th ed.1984) ("hog n .... 8. a homebuilt motorcycle ...."); *see also Glossary of Sportscycle Terms*, Bike and Rider, Aug. 1992, at 84 ("HOG Old fashioned, heavyweight sportscycle.").

A likely etymology of "hog" to mean a motorcycle is suggested in the entry for "road-hog" in Eric Partridge, *A Dictionary of Slang and Unconventional English* (6th ed.1996), which reports

issue of *Street Chopper* contained an article entitled "Honda Hog," [5] indicating that the word "hog" was generic as to motorcycles and needed a tradename adjective.

Beginning around the early 1970s and into the early 1980s, motorcyclists increasingly came to use the word "hog" when referring to Harley–Davidson motorcycles.[6] However, for several years, as Harley–Davidson's Manager of Trademark Enforcement acknowledged, the company attempted to disassociate itself from the word "hog." The Magistrate Judge drew the reasonable inference that the company wished to distance itself from the connection between "hog" as applied to motorcycles and unsavory elements of the population, such as Hell's Angels, who were among those applying the term to Harley–Davidson motorcycles.

*Harley–Davidson's use of the word "hog".* In 1981, Harley–Davidson's new owners recognized that the term "hog" had financial value and began using the term in connection with its merchandise, accessories, advertising, and promotions. In 1983, it formed the Harley Owners' Group, pointedly using the acronym "H.O.G." In 1987, it registered the acronym in conjunction with various logos. It subsequently registered the mark "HOG" for motorcycles. That registration lists Harley–Davidson's first use as occurring in 1990.

*Grottanelli's use of the word "hog".* Grottanelli opened a motorcycle repair shop under the name "The Hog Farm" in 1969. Since that time his shop has been located at various sites in western New York. At some point after 1981, Grottanelli also began using the word "hog" in connection with events and merchandise. He has sponsored an event alternatively known as "Hog Holidays" and "Hog Farm Holidays," and sold products such as "Hog Wash" engine degreaser and a "Hog Trivia" board game.

2. The Bar–and–Shield Logo

*Harley–Davidson's use of the logo.* Since approximately 1909, Harley–Davidson has used variations of its bar-and-shield logo—a shield traversed across the middle by a horizontal bar. The words "Motor" and "Cycles" (or sometimes "Company") appear at the chief and base of the shield, respectively, and the name "Harley–Davidson" appears on the horizontal bar. Variations of the bar-and-shield logo were registered with the United States Patent and Trademark Office in 1982 and thereafter.

*Grottanelli's use of the logo.* By 1979, Grottanelli had begun using variants of Harley–Davidson's bar-and-shield logo. His 1979 advertisements include a hand-drawn copy of the bar-and-shield logo, with the name "Harley–Davidson" displayed on the horizontal bar. Since 1982, in response to letters of protest from Harley–Davidson, Grottanelli has replaced the words "Harley–Davidson" on the horizontal bar of his logo with the words "American–Made." He has also placed a banner at the bottom of his logo with the words "UNAUTHORIZED DEALER." In 1986, Grottanelli began using his current logo, which adds an eagle's wings behind the shield. This addition was apparently patterned after Harley–Davidson's bicentennial logo design mark, which included an eagle above the shield. Grottanelli's 1986 version of his logo also features a drawing of a pig wearing sunglasses. Grottanelli acknowledged at trial that his bar-and-shield logo is his version of Harley–Davidson's logo and that his version is "supposed to be similar, but confusing ... [t]o a Harley–Davidson bar and shield."

*District Court's rulings.* The District Court concluded (i) that Grottanelli was the senior user of the mark "THE HOG FARM", and that his use of this mark did not violate Harley–Davidson's rights in the mark "HOG", (ii) that Grottanelli's other uses of the word "hog," without the word "farm,"

that in the United States as early as 1891 "roadhog" was applied to an "inconsiderate" cyclist and somewhat later to motorists.

**5.** The phrase "Honda Hog" also appeared in the September 8, 1991, edition of *USA Weekend.*

**6.** *See* Eric Partridge, *A Concise Dictionary of Slang and Unconventional English* (1989) (repeating the generic definition in the 1984 edition, *see* note 4, *supra,* and adding "Hibbert, 1983, however states that it is used for a Harley–Davidson, esp. one ridden by a Hell's Angel.").

violated New York's anti-dilution statute, N.Y. Gen. Bus. L. § 368–d, (iii) that Harley–Davidson · was the senior user of its registered bar-and-shield trademark, (iv) that Grottanelli's use of the bar-and-shield logo infringed plaintiff's mark and was not entitled to a parody defense, (v) that equity did not require the application of laches to allow Grottanelli to continue using the bar-and-shield logo, and (vi) that Grottanelli was not entitled to attorney's fees, because there was no evidence of Harley–Davidson's fraud or bad-faith in its attempt to bar Grottanelli from using the name "The Hog Farm."[7]

The District Court subsequently issued a detailed injunction, which defined Grottanelli's trading area from 1982 to the present as the counties of Erie, Niagara, Chautauqua, Cattaraugus, Orleans, Genessee, Allegany, and Wyoming, all located in New York. The injunction permitted Grottanelli (i) to conduct business under the name "The Hog Farm" in his trading area, (ii) to continue publishing and distributing a newsletter under the name "The Hog Farm Report" within and beyond his trading area, (iii) to continue distributing business cards, leaflets, and other promotional materials through the use of his mailing list and at motorcycle-related events outside his trading area, and (iv) to sponsor an event known as the "Hog Farm Holidays." However, except to the extent permitted by the provisions summarized above, the injunction prohibited Grottanelli from using the following in signage, business cards, advertisements, products, or otherwise: (i) Harley Davidson's bar-and-shield trademarks, (ii) Harley–Davidson's trademarks incorporating the word "hog," "including but not limited to 'Hog Wash,' 'Hog Trivia,' and 'Hog Holidays,'" and (iii) any similar mark that so resembles any of the bar-and-shield or "HOG" trademarks "as to be likely to cause confusion, mistake, deception, or dilution."

### Discussion

### I. Use of the Word "Hog"

■ The District Court, applying New York's anti-dilution statute, N.Y. Gen. Bus. L. § 368–d, enjoined Grottanelli from making various trademark uses of the word "hog" · (other than in the previously used tradename "The Hog Farm"). Harley–Davidson acknowledged at oral argument that its state law claim fails if "hog" is generic as applied to large motorcycles. No manufacturer can take out of the language a word, even a slang term, that has generic meaning as to a category of products and appropriate it for its own trademark use, see *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976) (applying Lanham Act); Restatement (Third) of Unfair Competition § 15 & cmt. b; 2 *McCarthy on Trademarks and Unfair Competition* §§ 12:1, 12:2, 12:11, · 12:18 (4th ed.1998) [hereinafter "*McCarthy*"] and New York applies this same principle to its anti-dilution statute, see *Telford Home Assistance, Inc. v. TPC Home Care Services, Inc.,* 211 A.D.2d 674, 674, 621 N.Y.S.2d 636, 636–37 (2d Dept.1995) (term "extended care" generic as to health services); see also *Eastern Air Lines, Inc. v. New York Air Lines, Inc.,* 559 F.Supp. 1270, 1274–75 (S.D.N.Y. 1983) (applying New York law) (term "shuttle" generic as to airline services).

■ Though the Magistrate Judge made no ultimate finding as to whether "hog" was generic as applied to large motorcycles prior to Harley–Davidson's trademark use of the word, his subsidiary findings point irresistibly toward that conclusion. He found that there was "substantial evidence which would indicate that in those years the term referred to motorcycles (or motorcyclists) generally." He cited the various press and dictionary usages of the word that we have set forth above. Though not conclusive, dictionary definitions of a word to denote a category of products are significant evidence of genericness because they usually reflect the public's perception of a word's meaning and its contemporary usage. See *Murphy Door Bed Co. v. Interior Sleep Systems, Inc.,* 874 F.2d 95, 101 (2d Cir.1989); *Liquid Controls Corp. v. Liquid Control Corp.,* 802 F.2d 934, 936 (7th Cir.1986). In this case, one dictionary cites a generic use of "hog" to mean a large motorcycle as early as 1967, long before Har-–

---

**7.** Although Harley–Davidson initially sought both legal and equitable relief, it withdrew its claim for money damages before the District Court resolved the issues raised on this appeal.

ley's first trademark use of the word,[8] and the recent dictionary editions continuing to define the word to mean a large motorcycle indicate that the word has not lost its generic meaning.[9] We have observed that newspaper and magazine use of a word in a generic sense is "a strong indication of the general public's perception" that the word is generic. *See Murphy Door Bed Co.*, 874 F.2d at 101. In this case, media use of "hog" to mean a large motorcycle began as early as 1935 and continued thereafter.[10]

However, rather than recognize that the word "hog," originally generic as applied to motorcycles, cannot subsequently be appropriated for trademark use, the Magistrate Judge upheld Harley–Davidson's anti-dilution claim on the ground that its "HOG" mark has become a strong trademark. This was error. Even the presumption of validity arising from federal registration, *see Reese Publishing Co. v. Hampton International Communications, Inc.*, 620 F.2d 7, 11 (2d Cir.1980), cannot protect a mark that is shown on strong evidence to be generic as to the relevant category of products prior to the proprietor's trademark use and registration.

Supporting the generic nature of "hog" as applied to motorcycles is Harley–Davidson's aversion to linking the word with its products until the early 1980s, long after the word was generic. Harley's Manager of Trademark Enforcement acknowledged that in the past Harley had attempted to disassociate itself from the term "hog." As the Magistrate Judge noted, Harley's own history of the company, "The Big Book of Harley–Davidson," makes no reference to "hog" as relating to its products before the early 1980s. Though Harley–Davidson was not shown to have used the word "hog" in a generic sense, *cf. Loglan Institute, Inc. v. Logical Language Group, Inc.*, 962 F.2d 1038, 1041 (Fed. Cir.1992) (proprietor's own generic use of mark strong evidence of genericness), its de-

liberate resistance to linking the word to its products is nonetheless probative.

Harley–Davidson cites the rulings in *Harley–Davidson Motor Co. v. Pierce Foods Corp.*, 231 U.S.P.Q. 857 (T.T.A.B.1986), and *Harley–Davidson, Inc. v. Seghieri*, 29 U.S.P.Q.2d 1956 (N.D.Cal.1993), but we are not bound by those decisions, and, more significantly, there is no indication that the bodies making those rulings had the extensive record of early generic usage that we have. In *Pierce Foods*, the litigation did not even raise the issue of the genericness of "hog." *Seghieri* apparently had scant evidence of genericness; the Court relied on articles from Harley's own newsletter, which indicated that "hog" meant Harley–Davidson motorcycles. *See* 29 U.S.P.Q.2d at 1958.

■ Professor McCarthy contends that, in some contexts, there might be a doctrine whereby trademark use can be reacquired in a generic term, and he cites the "SINGER" and "GOODYEAR" marks as examples. *See* 2 *McCarthy* §§ 12:30–12:32. But Professor McCarthy recognizes that his examples are words that were originally proper names of the manufacturer and that the cases he enlists, *Singer Mfg. Co. v. Briley*, 207 F.2d 519 (5th Cir.1953), and *Goodyear Tire & Rubber Co. v. H. Rosenthal Co.*, 246 F.Supp. 724 (D.Minn.1965), "do not stand for the proposition that a commonly used name of an article like 'computer,' 'typewriter' or 'flashlight' can be appropriated by one seller as a trademark." 2 *McCarthy* § 12:30, at 12–68 to –69. Moreover, if a generic word could ever be infused with trademark significance, the word must have ceased to have current generic meaning. *See Miller Brewing Co. v. Falstaff Brewing Corp.*, 655 F.2d 5, 9 (1st Cir.1981). The recent editions of the dictionaries cited by the District Court demonstrate that generic usage of "hog," applied to motorcycles, still exists.

---

**8.** *See The Oxford Dictionary of Modern Slang* (1992) ("hog noun U.S. A large, often old, car or motorcycle.1967 -.").

**9.** *See American Heritage Dictionary* (3d ed.1992) ("hog ... 4. *Slang*. A big, heavy motorcycle"); Eric Partridge, *A Dictionary of Slang and Unconventional English* (8th ed.1984) ("hog n .... 8. a homebuilt motorcycle ...."); *see also Glossary*

*of Sportscycle Terms*, Bike and Rider, Aug. 1992, at 84 ("HOG Old fashioned, heavyweight sportscycle.").

**10.** *See Time Machine*, Popular Mechanics, June 1995, at 16 (reprinting cover and caption of June 1935 issue) (reference to "Hog Heaven"); *see also* note 2, *supra*.

■ Nor does Professor McCarthy's discussion of so-called "dual usage" terms provide any help to Harley–Davidson. *See* 2 *McCarthy* § 12:51. "Dual usage" in trademark law refers to a mark that starts out as proprietary and gradually become generic as to some segments of the public. If such a mark "retains" trademark significance, injunctive relief must be carefully tailored to protect only the limited trademark use and not to bar the generic use. *See id.* at 12–99; Restatement (Third) of Unfair Competition § 15, cmt. d (1995). Our case, however, concerns a mark that starts out generic and is sought to be given trademark significance by a manufacturer. That is what *Abercrombie* and other cases forbid.

■ Harley–Davidson suggests, albeit in a footnote, *see* Brief for Appellee at 18 n. 2, that it is entitled to trademark use of "HOG" as applied to motorcycles because a substantial segment of the relevant consumers began to use the term specifically to refer to Harley–Davidson motorcycles before the company made trademark use of the term. Some decisions have invoked this principle to accord a company priority as to its subsequent trademark use of a term. *See National Cable Television Ass'n, Inc. v. American Cinema Editors, Inc.*, 937 F.2d 1572 (Fed.Cir. 1991) (mark "ACE"); *Volkswagenwerk AG v. Hoffman*, 489 F.Supp. 678 (D.S.C.1980) (mark "BUG"). Whether or not we would agree with these decisions, they present a significantly different situation. Neither "ACE" nor "BUG" was a generic term in the language as applied, respectively, to a category of film editors or a category of automobiles prior to the public's use of the terms to refer to the American Cinema Editors and Volkswagen cars. By contrast, "hog" was a generic term in the language as applied to

large motorcycles before the public (or at least some segments of it) began using the word to refer to Harley–Davidson motorcycles.[11] The public has no more right than a manufacturer to withdraw from the language a generic term, already applicable to the relevant category of products, and accord it trademark significance, at least as long as the term retains some generic meaning.[12]

For all of these reasons, Harley–Davidson may not prohibit Grottanelli from using "hog" to identify his motorcycle products and services. Like any other manufacturer with a product identified by a word that is generic, Harley–Davidson will have to rely on all or a portion of its tradename (or other protectable marks) to identify its brand of motorcycles, *e.g.*, "Harley Hogs." [13]

## II.  Bar–and–Shield Logo

■ *Parody defense.* Grottanelli admits that his use of his bar-and-shield logo "purposefully suggests an association with Harley," Brief for Appellant at 28, but argues that his use is a protectable parody. We have accorded considerable leeway to parodists whose expressive works aim their parodic commentary at a trademark or a trademarked product, *see, e.g., Cliffs Notes, Inc. v. Bantam Doubleday Dell Publishing Group, Inc.*, 886 F.2d 490, 493–95 (2d Cir.1989), *cf. Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir.1989), but have not hesitated to prevent a manufacturer from using an alleged parody of a competitor's mark to sell a competing product, *see Deere & Co. v. MTD Products, Inc.*, 41 F.3d 39 (2d Cir.1994) (applying New York's anti-dilution statute). Grottanelli uses his bar-and-shield logo on the signage of his business, in his newsletter, and on T-shirts. The signage on his business is, in

11. *See* note 2, *supra.*

12. This impermissible use of a generic term is to be contrasted with the public's use of a word that is in the language (with one or more meanings) to identify a product within a category to which the word has not previously been applied. For example, though "coke" was in the language to mean a fuel (and, in slang usage, a drug), the word had no previous meaning as a beverage until consumers began calling Coca–Cola "Coke." The public may also take a trademark

and give it a generic meaning that is new. *See Lucasfilm, Ltd. v. High Frontier*, 622 F.Supp. 931 (D.D.C.1985) ("Strategic Defense Initiative" referred to as "Star Wars Program" without infringing movie trademark STAR WARS); 2 *McCarthy* § 12:3.

13. In light of our ruling, we need not consider, with respect to Grottanelli's use of the term "hog," his defense of laches or both parties' challenge to the geographic scope of the injunction.

effect, trademark use for a competing service, since Harley–Davidson offers motorcycle repair services through its authorized dealers, and Grottanelli's placement of his bar-and-shield logo on his newsletter and T-shirts promotes his repair and parts business. In this context, parodic use is sharply limited. *See Deere,* 41 F.3d at 45 (citing *Wendy's International, Inc. v. Big Bite, Inc.,* 576 F.Supp. 816 (S.D.Ohio 1983)).[14]

Grottanelli's claimed parodic use of Harley–Davidson's logo is vulnerable not only because he uses it to market competing services but also because whatever protection is to be afforded a trademark parody must be informed by the Supreme Court's recent elucidation in the copyright context of parodies allegedly protected by the defense of fair use. *See Campbell v. Acuff–Rose Music, Inc.,* 510 U.S. 569, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994). "[T]he heart of any parodist's claim to quote from existing material[ ] is the use of some elements of a prior author's composition to create a new one that, at least in part, *comments on that author's works.*" *Id.* at 580, 114 S.Ct. 1164 (emphasis added). The comment must have some "critical bearing on the substance or style of the original composition." *Id.* The Supreme Court's parody explication as to copyrights, set forth in the context of an expressive work, is relevant to trademarks, *see* Robert S. Shaughnessy, Note, *Trademark Parody,* 72 Va. L.Rev. 1079 (1986), especially a trademark parody that endeavors to promote primarily non-expressive products such as a competing motorcycle repair service. Grottanelli's mark makes no comment on Harley's mark; it simply uses it somewhat humorously to promote his own products and services, which is not a permitted trademark parody use. *See Deere,* 41 F.3d at 44–45; *Hard Rock Cafe Licensing Corp. v. Pacific Graphics, Inc.,* 776 F.Supp. 1454, 1462 (W.D.Wash.1991); *Grey v. Campbell Soup Co.,* 650 F.Supp. 1166, 1175

(C.D.Cal.1986), *aff'd,* 830 F.2d 197 (9th Cir. 1987).

■ *Disclaimer defense.* Grottanelli gains no protection by coyly adding to his version of the bar-and-shield logo the wording "UNAUTHORIZED DEALER." We have alluded to commentary questioning the capacity of brief negating words like "not" or "no" in disclaimers adequately to avoid confusion. *See Home Box Office, Inc. v. Showtime/The Movie Channel Inc.,* 832 F.2d 1311, 1316 (2d Cir.1987) (citing Jacoby & Raskoff, *Disclaimers as a Remedy for Trademark Infringement Litigation: More Trouble Than They Are Worth?,* 76 Trademark Rep. 35, 54 (1986)). Whatever the worth of such disclaimers in other contexts, the use of the prefix "UN" before "AUTHORIZED DEALER" provides Grottanelli with no defense when used on signage designed to attract speeding motorcyclists. *See* Restatement (Third) of Unfair Competition § 21 cmt. c (noting that "[a]lthough in theory a *prominent* disclaimer of association with the prior user can reduce or eliminate confusion, the courts have ordinarily found the use of disclaimers insufficient to avoid liability for infringement") (emphasis added).

■ *Laches defense.* Grottanelli's defense of laches with respect to the bar-and-shield logo was also properly rejected. His intention to confuse undermines any claim of good faith, *see Cuban Cigar Brands, N.V. v. Upmann International, Inc.,* 457 F.Supp. 1090, 1099 (S.D.N.Y.1978), and the Magistrate Judge found that Grottanelli would not be prejudiced if precluded from using his version of the bar-and-shield logo. Furthermore, Harley–Davidson has previously communicated its concern about earlier versions of Grottanelli's logo, and there is no evidence that Harley–Davidson was aware of Grottanelli's recent use of his current version of the logo.

---

**14.** As the Restatement explains:

Use of another's trademark, *not as a means of identifying the user's own goods or services,* but as an incident of speech directed at the trademark owner, however, raises serious free speech concerns *that cannot be easily accommodated under* traditional trademark doctrine. The expression of an idea by means of the use of another's trademark as a parody, for example, will often lie within the substantial constitutional protection accorded noncommercial speech and may thus be the subject of liability only in the most narrow circumstances.

Restatement (Third) of Unfair Competition § 25, cmt. i (1995) (emphasis added).

814

For all of these reasons, Grottanelli was properly enjoined from using his current bar-and-shield logo and any mark that so resembles Harley–Davidson's trademarked logo as to be likely to cause confusion.

## Conclusion

The judgment of the District Court is affirmed to the extent it enjoined Grottanelli's use of his bar-and-shield logo and reversed to the extent that it enjoined his use of the word "hog."  No costs.