**BLISS SALON DAY SPA,**
**Plaintiff–Appellant,**

v.

**BLISS WORLD LLC, Defendant–**
**Appellee.**

No. 01–1173.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 7, 2001.

Decided Oct. 4, 2001.

Harry Levy (argued), Emrich & Dithmar, Chicago, IL, for Plaintiff–Appellant.

Richard Z. Lehv (argued), Fross, Zelnick, Lehrman & Zissu, New York City, for Defendant–Appellee.

Before BAUER, EASTERBROOK, and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

Both parties to this suit use the mark BLISS in connection with beauty salons and beauty-care products, such as shampoo. Bliss Salon is the senior user between the two, having opened in 1979 its one and only outlet in Wilmette, a suburb of Chicago. Bliss World adopted the mark in 1996 when it opened Bliss Spa in the Soho district of New York. It has set out to create an international chain of beauty parlors, also selling BLISSOUT and BLISSLABS products in retail outlets such as Saks Fifth Avenue, by catalog, and through a web site. Bliss World registered its marks in 1997 for use in connection with spas and beauty-care products, a step that Bliss Salon neglected; it is uncontested that Bliss World adopted the mark without knowledge of Bliss Salon's prior use.

In this action under § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), Bliss Salon seeks an injunction that would forbid Bliss World to open a beauty parlor, or sell any of its products, within 100 miles of Chicago's Loop. The district court denied Bliss Salon's motion for a preliminary injunction, 2000 WL 1898597, 2000 U.S. Dist. LEXIS 18871 (N.D.Ill.Dec. 22, 2000), and on this appeal Bliss Salon has all but ignored the deference accorded by an appellate court to a decision about preliminary relief. See *Maxim's Ltd. v. Badonsky*, 772 F.2d 388, 390 (7th Cir.1985); *Ty, Inc. v. Jones Group*, 237 F.3d 891, 896 (7th Cir.2001).

Plaintiff sealed its fate by making an outlandish demand: Milwaukee, Rockford, Gary, and South Bend all are part of the 31,416 square miles that lie within 100 miles of the Loop, yet few residents of these cities are likely to know about a one-store operation to the northwest of Chicago, so there is only slight risk that goods offered by Bliss World will be mistaken for the products of Bliss Salon. (Unless Bliss Salon itself causes the confusion. For seven months Bliss Salon printed the URL of Bliss World's web site on its own price lists and business cards, and in an instance of cybersquatting plaintiff registered the domain name "blissdayspa.com", the name of defendant's flagship outlet, while omitting the word "salon" that distinguishes the two firms.) The risk of confusion between Bliss World and Bliss Salon is low even near Chicago, because many *other* firms in the beauty industry (at least one in Chicago, perhaps ten within the 100–mile radius, and a few with national distribution) use BLISS as a mark for some of their wares. This may make it hard to employ BLISS as a designation of source for *any* product; it makes it all but impossible to imagine that a consumer seeing the mark BLISS would assume that the product or service must come from Bliss Salon Day Spa of Wilmette. And without a likelihood of confusion about source, there is no claim under § 43(a)(1)(A) of the Lanham Act.

■ At oral argument plaintiff's counsel invited us to cut the radius from 100 miles to 25 (a mere 1,963 square miles), but this is not the right forum; our task is to decide whether the district judge abused her discretion, not to make an independent decision about appropriate relief. And a smaller radius would do Bliss Salon no good, at least on this record. So far as the record reveals, not a single customer has ever expressed confusion about source, returned one of Bliss World's products to Bliss Salon seeking a refund, or complained to Bliss Salon about the high prices in Bliss World's catalog. Bliss Salon has not conducted a survey or offered any other means by which the district court could infer a likelihood of confusion in the future.

Instead Bliss Salon argues that it is entitled to relief *without the need for evidence*, because the word "bliss" is "suggestive," and all "suggestive" marks are protected automatically, without need to prove secondary meaning or likely confusion. "Bliss" is not generic, and it does not describe any attribute of hair styling or shampoo. Emotions are not product attributes; if one could achieve "bliss" by washing one's hair many religious leaders and psychoanalysts would be out of business. Thus the word must be "suggestive," and a suggestive mark creates an entitlement to protection from usurpers, the argument wraps up.

■ That is itself a misleading (confused?) statement of trademark law. Section 43(a)(1)(A) provides relief only when another person's use of a mark "is likely to cause confusion, or to cause mistake, or to deceive ... as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person". Proof of likely confusion about source is a statutory requirement. Judge Friendly proposed the continuum of generic, descriptive, suggestive, arbitrary, and fanciful marks as a heuristic, a means to guide thought rather than to replace the statutory requirements. See *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9–11 (2d Cir.1976). Suggestive ("Tide" laundry detergent), arbitrary ("Apple" computers), and fanciful ("Exxon" gasoline) marks collectively are distinctive in the sense that secondary meaning is likely to develop, as a result of which any duplicate use of the name is likely to breed

confusion about the product's source. Generic marks, on the other hand, designate the products themselves rather than any particular maker, and descriptive marks might (but usually won't) acquire distinctiveness. *Wal–Mart Stores, Inc. v. Samara Brothers, Inc.,* 529 U.S. 205, 212–13, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000), approved this general approach (and applied it to trade dress) while insisting that marks actually *be distinctive* if they were to qualify for the "inherently distinctive" category.

A court cannot choose between the "descriptive" and "suggestive" categories on the basis of a dictionary; Judge Friendly's continuum is functional, and placement must be functional too. This is why we held in *Platinum Home Mortgage Corp. v. Platinum Financial Group,* 149 F.3d 722, 730 (7th Cir.1998), that the word "platinum" is descriptive rather than suggestive in the financial-services industry. Platinum, like the phrase "gilt-edged," suggests high quality or elegance, and issuers of credit cards or mortgage loans may choose it because of the association with the upper crust; in this *linguistic* sense the word is suggestive. But because so many firms use the word (and the color) for financial products, it cannot be inherently distinctive; quite the contrary, it is no more distinctive than a "gold card" or "born with a silver spoon in his mouth." Functionally, therefore, the word had to go in the descriptive category. "Tide" detergent is linguistically suggestive (it suggests the cleansing action of water), but this mark is and remains *legally* suggestive only because it has retained distinctiveness as a product identifier. BLISS marks are a glut on the market in hair styling and beauty care. They are not distinctive, so the word does not belong in the "suggestive" cubbyhole. If Bliss Salon wants to get anywhere in this litigation, it will have to prove that its mark has ac-

quired secondary meaning and that Bliss World's use of the same mark is likely to cause confusion about source in or near Wilmette. See *Sunmark, Inc. v. Ocean Spray Cranberries, Inc.,* 64 F.3d 1055 (7th Cir.1995); cf. *Zazú Designs v. L'Oréal, S.A.,* 979 F.2d 499 (7th Cir.1992).

AFFIRMED.