In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-3618

H-D MICHIGAN, INC. and
HARLEY-DAVIDSON MOTOR COMPANY, INC.,

*Plaintiffs-Appellants,*

*v.*

TOP QUALITY SERVICE, INC,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04 C 0533—**Charles N. Clevert, Jr.**, *Judge.*

ARGUED MARCH 29, 2007—DECIDED AUGUST 2, 2007

Before FLAUM, EVANS, and WILLIAMS, *Circuit Judges.*

FLAUM, *Circuit Judge.* H-D Michigan, Inc. and Harley Davidson Motor Co., Inc. (collectively, "Harley") sued Top Quality Service, Inc. ("Top Quality"), alleging trademark infringement, false designation of origin, and unfair competition claims under the Lanham Act, 15 U.S.C. § 1125(a), and state law. According to Harley's complaint, Top Quality's use of the name, "HOGS ON THE HIGH SEAS," which it uses to advertise ocean cruises for motorcycle enthusiasts, infringes on two Harley trademarks—"HOG" and "H.O.G."—that Harley uses for its motorcyclist travel club, the Harely Owners Group. The district

court granted summary judgment in Top Quality's favor, concluding that a Second Circuit decision collaterally estopped Harley from bringing trademark claims premised on its use of the word "hog" to refer to motorcycle products or services. Harley appeals the district court's ruling granting Top Quality's motion for summary judgment. For the following reasons, we reverse and remand.

## I. Background

Harley is universally recognized as a manufacturer of high quality motorcycles. In 1983, it established the Harley Owners Group, a 700,000 member social club for people who own Harley motorcycles. Buyers of Harley motorcycles receive a free, one-year membership in the Harley Owners Group, but they must pay annual dues or buy a lifetime membership to remain in the club. Since 1998, the club has offered travel services to members attending club-sponsored motorcycle rallies. The Federal Patent and Trademark Office has issued Harley the registered trademarks "HOG" and "H.O.G." to refer to its motorcyclist club.[1]

Dean and Debbie Anderson are longtime Harley motorcycle owners and members of the Shenandoah Valley Chapter of the Harley Owners Group. In 2001, Dean Anderson came up with an idea to sell a cruise to motorcyclists. He was tired of attending traditional motorcycle rallies because the weather was unpredictable and because vendors charged inflated prices for food and lodging. He

---

[1] The Trademark Office issued the "HOG" mark after Harley filed this suit. The parties do not discuss what legal effect this may have on the burden of proof, *see* 15 U.S.C. 1115, and we believe the issue, if raised, is one best resolved in the first instance by the district court.

pitched the cruise idea to David Gray, Harley's east coast Harley Owners Group representative, but Gray said that Harley would not be interested in sponsoring a cruise. The Andersons continued to explore the possibility of offering the cruise on their own and eventually incorporated Top Quality as a means of selling their product. They decided to name the cruise "HOGS ON THE HIGH SEAS"—a catchy name that they believed captured the essence of their product.

In August 2002, the Andersons created the first advertisement for their cruise. It said, "1st Annual Harley Owners' Cruise Rally" in large print immediately above a circular logo that contained the words "HOGS ON THE HIGH SEAS" and a cartoon pig riding a large motorcycle on an ocean wave. Top Quality's website said, "Bring your Harley friends, HOG group members, riding buddies, there won't be a stranger on the ship." Top Quality advised potential vendors that the trip was an "all Harley Owners Cruise Ship Rally." Ninety-seven percent of the passengers on the first cruise owned Harley motorcycles.

Since November 2003, Top Quality has sponsored several cruises in the Carribean and Alaska. Passengers are not allowed to bring their motorcycles on the ship, but there are vendors who display motorcycles and motorcycle-related products and services. The cruises include entertainment, contests, and excursions that are designed to appeal to motorcycle enthusiasts.

There is evidence that some of Top Quality's potential customers have been confused about whether the cruise is sponsored by the Harley Owners Group. Shortly after it was launched, Top Quality's website posted a list of Frequently Asked Questions that included, "Do I have to be a HOG Member" and "Can I get on this Rally Cruise if I don't own a Harley Davidson Brand Bike." In surveys completed after the cruise, a number of passengers used

the word "hog" to refer to Top Quality's passengers and cruise-related events. Additionally, prospective customers have referred to the cruise in their communication with Top Quality as "hd cruise," "Harley cruise," and "HOG cruise." A consumer survey conducted by Harley's expert suggests that twenty-seven percent of motorcycle riders who view Top Quality's promotional materials believe that Harley promotes or approves of Top Quality's cruises. The same survey suggests that much of this confusion stems from Top Quality's use of the word "hog" and the word's association with the Harley Owners Group.

There is also evidence that Top Quality has attempted to limit any such confusion. Its website currently disclaims association with Harley and the Harley Owners Group, and it has printed similar statements on literature that it distributes at motorcycle rallies. Top Quality's brochures also state that Dean and Debbie Anderson are the owners of HOGS ON THE HIGH SEAS and that they are "independent cruise consultants."

On January 31, 2003, Top Quality applied to register the HOGS ON THE HIGH SEAS mark in connection with "travel arrangements in the nature of cruises for motorcycle owners and enthusiasts." On January 23, 2004, Harley filed an opposition proceeding against the application, and on June 4, 2004, Harley filed the complaint in this case. It alleged trademark infringement, false designation of origin, and unfair competition claims under the Lanham Act and state law. The parties filed cross-motions for summary judgment, and the district court granted Top Quality's and denied Harley's motion. It concluded that a Second Circuit decision, *Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806 (2d Cir. 1999), which held Harley's "H.O.G." mark generic, collaterally estopped Harley from arguing that its "H.O.G." mark was protectable.

The district court said that *Grottanelli* "pertains to any use of the word 'hog,' including the acronym 'H.O.G.' when 'hog' is used in relation to 'motorcycle products *or services*.'" *H-D Michigan, Inc. v. Top Quality Service, Inc.*, No. 04 C 0533, 2006 WL 2547083, *3 (E.D. Wis. Aug. 31, 2006) (emphasis in original). The district court further observed as follows:

> In holding that 'hog' is generic, the court did not single out the 'H.O.G.' mark as non-generic because it refers to people rather than motorcycles. To the contrary, it mentioned the 'H.O.G.' mark as part of Harley's illegitimate efforts to exclude the term 'hog' from the generic pool . . . . Thus, the *Grotanelli* court was aware of (1) the 'H.O.G.' mark; and (2) that the acronym denoted members of Harley Owner' [sic] Group rather than motorcycles. Nevertheless, the court made no distinction between Harley's application of the term 'hog' to large motorcycles and to H.O.G. members.

*Id.* (internal citations omitted). With regard to Harley's unfair competition claim, the district court recognized that a plaintiff using a generic name can succeed on such a claim if the defendant has not adequately identified itself as the source of its product. The court concluded, however, that Top Quality had identified itself as the source of its product by disclaiming any association with Harley. *Id.* at *4-5. Harley appeals the district court's ruling on Top Quality's motion for summary judgment.

## II. Analysis

The Court reviews the district court's grant of summary judgment de novo. "Summary judgment is appropriate where the evidence in the record shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Steen v. Myers*, 486 F.3d 1017, 1021 (7th Cir. 2007). We take the facts in the light most favor-

able to the non-moving party and draw all reasonable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"[T]o prove a claim pursuant to 15 U.S.C. § 1125(a), a plaintiff must show (1) that its trademark may be protected and (2) that the relevant group of buyers is likely to confuse the alleged infringer's products or services with those of plaintiff." *Forum Corp. of N. Am. v. Forum, Ltd.*, 903 F.2d 434, 439 (7th Cir. 1990). Marks are either fanciful, arbitrary, suggestive, descriptive, or generic. *See Bliss Salon Day Spa v. Bliss World LLC*, 268 F.3d 494, 496 (7th Cir. 2001). "A generic term is one that is commonly used as the name of a kind of goods." *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986). A descriptive term, by contrast, is one that names a characteristic of a particular product or service. *See* J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11:16 (4th ed. 2007).[2] Generic and descriptive marks ordinarily cannot function as trademarks, but a descriptive mark may warrant protection if it has acquired secondary meaning. *See Custom Vehicles, Inc. v. Forest River, Inc.*, 476 F.3d 481, 483 (7th Cir. 2007); *Liquid Controls Corp.*, 802 F.2d at 935. A descriptive mark acquires secondary meaning if the product name comes "to be uniquely associated with the original seller." *Custom Vehicles, Inc.*, 476 F.3d at 483.

A company's name may be generic as to one of its products, but not generic as to its other products, even those related to the first product. *See* McCarthy, *supra* at § 12:23. Two Second Circuit decisions illustrate this principle. In one, the court, in a decision authored by

---

[2]  For example, if an apple-seller names its company "APPLE," its name is generic. McCarthy, *supra* at § 12:1. If an apple-seller names its product "TASTY," its name is descriptive. *Id.* at § 11:18.

Judge Friendly, held that the word "safari" is generic as applied to a type of khaki hat and jacket, but not generic as applied to boots, shoes, shirts, ice chests, and tobacco. *See Abercrombie & Fitch Co. v. Hunting World Inc.*, 537 F.2d 4, 11-12 (2d Cir. 1976). In another, the court held that the word "self-realization" is a generic name for a yoga organization (people performing yoga attempt to attain self-realization), but descriptive as applied to yoga books and classes. *See Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 909-10 (2d Cir. 1995).

Top Quality argues that *Grottanelli* precludes Harley from arguing that its "HOG" mark is protectable because that case held that the "HOG" mark was generic. Harley responds that *Grottanelli* only held that "HOG" was generic as applied to large motorcycles, not to a motorcyclist club. It further argues that neither its use nor Top Quality's use of the word "hog" is generic and that a jury reasonably could find that Top Quality's mark likely confused consumers.

### A. Collateral Estoppel

For a ruling to have collateral estoppel effect, "four elements must be met: '(1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action.'" *Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir. 1994) (quoting *La Preferida Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 906 (7th Cir. 1990)). In this case, the parties only dispute whether the issue litigated in *Grottanelli* is the same as the one here. Harley contends that the issues are different because in *Grottanelli*, the

Second Circuit evaluated whether the word "hog" was generic as applied to large motorcycles, whereas in this case, the issue is whether "hog" was generic as applied to a motorcyclist club. Top Quality contends that *Grottanelli* held that "hog" is generic as applied to all motorcycle products and services, thus precluding Harley's infringement claim.

In *Grottanelli*, Harley sued Ronald Grottanelli under New York's anti-dilution statute, which, like the Lanham Act, prevents a company from infringing on another's trademark. Grottanelli owned a motorcycle repair shop called "The Hog Farm," sponsored an event known as "Hog Holidays," and sold "Hog Wash" engine degreaser and a "Hog Trivia" board game. After discussing the history and meaning of the word "hog," the Second Circuit held that Harley's use of the word was generic as applied to large motorcycles. The court said that Harley's use of the word "hog" was not protectable because "hog" means large motorcycle. The court explained that "[n]o manufacturer can take out of the language a word, even a slang term, that has generic meaning as to a category of products and appropriate it for its own trademark use." *Grottanelli*, 164 F.3d at 810.

The first sentence in *Grottanelli* strongly suggests that the issue in that case was different than the one here. The court said, "This appeal primarily involves trademark issues as to whether the mark 'HOG' *as applied to large motorcycles* is generic . . . ." *Id.* at 808 (emphasis added). The court then summarized its holding by stating, "[W]e conclude that the word 'hog' had become generic *as applied to large motorcycles* before Harley-Davidson began to make trademark use of 'HOG.'" *Id.* (emphasis added). A few paragraphs later, the court discussed the history of "The Word 'Hog' Applied to Motorcycles" and, in the remainder of the opinion, referred to the generic nature

of the word 'hog' "as applied to motorcycles" or "as applied to large motorcycles" at least ten different times. The court never stated that "hog" was generic as applied to a motorcyclist club or to motorcycle products or services.

The Second Circuit also noted that Harley conceded that its claim failed if the word "hog" was generic as applied to large motorcycles, further suggesting that the court had no occasion to decide the issue in this case. *Id.* at 810. Finally, the parties' Second Circuit briefs did not discuss whether "hog" was generic as applied to a motorcyclist club, focusing instead on whether "hog" means large motorcycle. *See Wozniak v. County of DuPage*, 845 F.2d 677, 683 (7th Cir. 1988) (examining the pleadings from the prior suit to determine what issues were litigated).

*Grottanelli* did mention that the "HOG" trademark was used to refer to Harley's motorcyclist club, but the court did not state, or even suggest, that Harley's use of the word "hog" was generic as applied to the Harley Owners Group. In short, the *Grottanelli* opinion and the parties' briefs convince us that the Second Circuit did not resolve the issue here: whether "hog" is a generic word for a motorcyclist club. Accordingly, Harley is not collaterally estopped from bringing the claims in this case.

Top Quality argues that *Grottanelli* must have held that "hog" was generic for all motorcycle products and services because it allowed Grottanelli to continue using the word "hog" when promoting his "Hog Holiday" motorcycle rally, "Hog Wash" engine degreaser, and "Hog Trivia" board game. Top Quality seems to suggest that by allowing Grottanelli's continued use of his trade names, the Second Circuit found that both Harley's and Grottanelli's use of the word "hog" was generic. However, that is simply not the case. The Second Circuit had no occasion to decide whether Grottanelli's use of the word "hog" was generic, because it already had held that Harley's mark as

applied to large motorcycles was not protectable, and Harley conceded that this doomed its claim. A plaintiff's generic use of a word has no bearing on whether the defendant's use of the word is also generic.

## B.  Protectability

Having resolved that collateral estoppel does not preclude Harley's suit, we must address the merits. From our previous discussion, it should be evident that Harley's use of the word "hog" is not generic as applied to its motorcyclist club. As noted above, a generic term is commonly used as a name for the seller's goods, *see Liquid Controls Corp.,* 802 F.2d at 936, while a descriptive term names a characteristic of a particular product or service. *See* McCarthy, *supra* at § 11:16. The word "hog" is not commonly used as a name for a motorcyclist club. It is a name for a motorcycle. As such, Harley's use of the word "hog" to refer to the Harley Owners Group is not generic; rather, it is descriptive because it describes the club's members: people who enjoy motorcycles. *See* McCarthy, *supra* at § 11:16 (stating that marks are descriptive if they describe the class of users of the goods or services) (citing cases); *see also Shaw-Barton, Inc. v. John Baumgarth Co.*, 313 F.2d 167, 168 (7th Cir. 1963) (holding that "Homemaker" calendars are descriptive of the class of users).[3]

---

[3]  Top Quality does not argue that Harley's mark lacks secondary meaning, and neither party discusses whether Harley is required to offer evidence of secondary meaning. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194-197 (1985) (holding that once a descriptive mark becomes incontestable, it cannot be challenged as lacking secondary meaning). We take

(continued...)

Top Quality argues that it uses the word 'hogs' generically, and thus cannot be infringing on Harley's mark. *See* McCarthy, *supra* at § 12:3 (stating that a plaintiff's trademark suit can be dismissed if the defendant's use of a word is generic). However, this argument lacks merit as well. Though a consumer might conclude that Top Quality's trade name means "Motorcycles on the High Seas," that is not what Top Quality is selling. *See* McCarthy, *supra* at 12:1 (stating that when a name is generic, "the name of the product answers the question 'What are you?'"). Top Quality's service does not invite motorcycles to travel on the ocean; it invites *motorcyclists* to travel on the ocean. As a result, its mark is not generic.

### C. Likelihood of Confusion

Having determined that Harley's "HOG" and "H.O.G." marks are protectable, we need not discuss at length the issue of likelihood of confusion, for Harley has offered evidence of actual confusion in the form of a survey and questions asked by Top Quality's customers. *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 618 (7th Cir. 1993) (holding that a plaintiff's consumer survey can be evidence of actual confusion). And evidence of actual confusion (so long as it is not de minimis) ordinarily is sufficient to create a genuine issue of material fact on the issue of likelihood of confusion. *See Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 902 (9th Cir. 2002) ("[I]f a party produces evidence from which a reasonable jury could surmise that an appreciable number of people are confused about the source of the product, then it is entitled to a trial on the likelihood of confusion.") (empha-

---

[3] (...continued)
no position on the issue.

sis in original and internal quotation omitted); *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 297 (7th Cir. 1998) ("[E]vidence of actual confusion, where it exists, is entitled to substantial weight."). The fact that some of Top Quality's promotional materials disclaimed association with Harley merely underscores the need for a jury to resolve the conflicting evidence relating to this issue.[4]

### D.  Unfair Competition

The district court's ruling on Harley's unfair competition claim was premised on its mistaken belief that Harley's "HOG" mark is generic. Because we conclude that the "HOG" mark is not generic, we reverse the district court's ruling on this claim as well.

### III.  Conclusion

For the foregoing reasons, we REVERSE the district court's ruling granting summary judgment in Top Quality's favor and REMAND the case for further proceedings consistent with this opinion.

---

[4] Consumers may be confused notwithstanding the fact that Harley often uses the word 'hog' in the singular form and with periods, while Top Quality uses the word in the plural form without periods. *See Pastificio Spiga Societa Per Azioni v. De Martini Macaroni, Co.*, 200 F.2d 325, 326 (2d Cir. 1952) ("The attempt of the defendant to distinguish between the five letters 'S.P.I.G.A.' and the word 'Spiga' where the letters were not separated seems to be essentially a distinction without a difference."); McCarthy, *supra* at § 23:52 ("Merely because a defendant uses a mark similar to a registered mark, but in a form or script different from that shown in the registration, does not preclude a finding of infringement of the registered mark.")

EVANS, *Circuit Judge*, dissenting.   Because I believe *Harley-Davidson v. Grottanelli*, 164 F.3d 806 (2d Cir. 1999), cannot be credibly distinguished from this case, I respectfully dissent.

Specifically, I disagree in part with the majority's statement that the Second Circuit "never stated that 'hog' was generic as applied to a motorcyclist club or to motor-cycle products or services." It is true that the court did not discuss motorcycle clubs, but, as to the other half of that statement, it is clear that the entire *Grottanelli* opinion is about motorcycle products and services. Grottanelli was not manufacturing motorcycles he called "Hogs." He was using "hog" to name his products and services: Hog Farm, Hog Farm Holidays, Hog Holidays, Hog Wash engine degreaser, and a Hog Trivia board game. And the court specifically concluded:

> For all of these reasons, Harley-Davidson may not prohibit Grottanelli from using "hog" to identify his *motorcycle products and services*. [Emphasis added.]

At 812. It is, I think, disingenuous to attempt to distin-guish something like "Hog Holidays" from cruises called "HOGS ON THE HIGH SEAS."

Even Harley recognizes the difficulty in making that distinction, a difficulty it tries to overcome by inviting us to leap to the conclusion that Top Quality is using HOGS to refer to a club for motorcyclists, thus taking it out of the reach of *Grottanelli*. The majority, regrettably, accepts Harley's invitations. With all due respect, I cannot see that conclusion as anything but strained. I see nothing in Top Quality's logo, or in the way it uses the word "hogs," which indicates that it is referring to a motorcycle club. It's referring to motorcycles, plain and simple.

Because Top Quality's use of the word does not refer to motorcycle clubs, we should afford preclusive effect to *Grottanelli*, a decision which provides considerable sup-

port for its conclusion that "hog" as applied to motorcycles is generic. The Second Circuit's careful analysis traces the history of the word as applied to motorcycles to the 1960s and 1970s. The court points out that in 1965, *Newsweek* and the *Saturday Evening Post* referred to "hog" as a "big motorcycle" and a "lean, dangerous beast." In 1967, Hunter S. Thompson quoted the *Los Angeles Times*, saying a hog was "the kind of cycle the German couriers used to run down dogs and chickens—and people—in World War II: low brutish machines, with drivers to match." *Grottanelli*, at 808 n.2. The court also cited dictionaries noting that a hog was a motorcycle, especially a large one, and a 1975 article in *Street Chopper* was entitled "Honda Hog." The metaphoric use of the word increased during the 1970s and 1980s, and it was often, no doubt, applied to Harley-Davidson motorcycles. But for several years Harley, *Grottanelli* tells us, tried to dissociate itself from the word "hog." Then in the 1980s, the company, apparently thinking that if you can't beat 'em, join 'em, changed course and started using the word. It also formed its club—H.O.G.—shorthand for the Harley Owners Group. Which is all fine and good. But, as *Grottanelli* holds, Harley can't commandeer and claim as its own the generic slang term "hog." We should brand that attempt as hogwash and affirm the grant of summary judgment for Top Quality that was entered by Judge Clevert in the district court.

A true Copy:

      Teste:

 

                _____
                *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*