**RETAIL SERVICES, INC. and Freebie, Inc., Plaintiffs,**

v.

**FREEBIES PUBLISHING, Eugene Zannon, and Gail Zannon, Defendants.**

**No. CIV.A. 02–1111–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Feb. 27, 2003.

Steven Thomas Cottreau, Esq., Sidley Austin Brown & Wood, Washington, DC, for Plaintiffs.

Hill Beverley Wellford, III, Esq., Gibson Dunn & Crutcher, LLP, Washington, DC, for Defendants.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

Before the Court is plaintiffs' Motion for Summary Judgment, in which plaintiffs seek judgment on all claims in both the complaint and counterclaim in this action. Plaintiffs, Retail Services, Inc. and Freebie, Inc., have sued defendants, Freebies Publishing and its owners Eugene and Gail Zannon, for a declaration that plaintiffs' website, freebie.com, does not violate the Anti–Cybersquatting Consumer Protection Act ("ACPA") and the Lanham Act. 15 U.S.C. § 1125 (2003). Plaintiffs also seek cancellation of defendants' "Freebies" trademark registration on the ground that the trademark is invalid because the word "freebies" is generic. Defendants have counterclaimed, alleging trademark infringement, unfair competition, trademark dilution, cybersquatting, and violation of the Virginia Business Conspiracy Act. Va. Code § 18.2–500 (2003). For the reasons stated below, plaintiffs' Motion for Summary Judgment will be GRANTED.

## FACTUAL BACKGROUND

In 1978, Brian Weiss registered a stylized version of the word "freebies" as a trademark for use in newspapers (Registration No. 1,108,616). Mr. Weiss used this trademark in the title of Freebies Magazine, a publication with information about free mail order offerings. Defendants Eugene and Gail Zannon bought Freebies Magazine in 1979, acquiring the rights to the Freebies trademark, and continued to publish Freebies Magazine using the trademark logo. Defendants abandoned the registration on June 18, 1985, but, claiming priority through abandoned registration, filed a new registration in 1992. Plaintiffs' Exhibit No. ("Pl.Ex.") 34. On November 30, 1993, the United States Patent and Trademark Office granted defendants a new registration of the word "freebies" and its stylized logo for use in "periodicals, namely magazines and newspapers with information about mail order offerings" (Registration No. 1,807,431). Defendants' Exhibit No. ("Df.Ex.") 22. As that registration shows, defendants' trademark is for the following stylized word:

Defendants published Freebies Magazine until March of 2001, at which time they abandoned their printed publications and began operating a website that provides information about mail order offerings. Defendants registered the domain name freebies.com on November 18, 1997. Pl.Ex. 35.

Plaintiff Retail Services, Inc., which is owned and operated by Frank Byrley, provides customer relationship management services ("CRM services") to retail companies. Retail Services installs and maintains computer systems connected to retail cash registers. This computer system identifies, based on a customer's purchase, an incentive offer that might attract that customer and prints that offer on the customer receipt. In 1991, during the period when defendants had abandoned the trademark, Byrley sought legal counsel regarding whether the term "freebie" was available for use and legally protectable. At that time, counsel advised Byrley that the term was generally available for use. Pl. Ex. 21. In 1995, Retail Services registered the domain name freebie.com for future use. Pl.Ex. 6N.

On November 22, 1999 Byrley formed Freebie, Inc. to provide his CRM services to one particular customer, Blockbuster, Inc. Under plaintiffs' contract with Blockbuster, Blockbuster customers earn "Freebie Points" when they rent or buy movies at any Blockbuster outlet. These customers can redeem their Freebie Points for free products and discounts from Blockbuster and other retailers. The freebie.com website, which became operational on August 1, 2001, allows Blockbuster customers who are members of the Freebie Program to access and manage their Freebie Points account and redeem their Freebie Points for merchandise.

On December 3, 2001, defendants sent plaintiffs a cease and desist letter demanding that plaintiffs cease using the word "freebie" on their website. Pl.Ex. 17. Plaintiffs responded that the word was generic and that they would not stop using it. Pl.Ex. 18. On April 30, 2001, Freebies Publishing brought an arbitration proceeding against Retail Services under the Uniform Domain Name Dispute Resolution Policy ("UDRP"), seeking transfer of the domain name freebie.com to Freebies Publishing. Pl.Ex. 16.

Pursuant to the UDRP Rules, National Arbitration Forum ("NAF") panelist Carolyn Marks Johnson considered whether the domain name was confusingly similar to a registered trademark, whether Retail Services had any rights or legitimate interest in the domain name, and whether the domain name had been registered and used in bad faith. Johnson found that the domain name, freebie.com, was confusingly similar to the Freebies trademark, and

that Retail Services had no trademark rights in the name freebie.com. Regarding bad faith, Johnson found that Retail Services' use of the word "freebies" in a meta-tag for its own site was evidence that it was aware of defendants' trademark and had registered the freebie.com domain name in bad faith.[1]

Based on this finding of bad faith, the NAF panelist ordered the registration of the domain name freebie.com transferred to defendants. Pl.Ex. 15. Plaintiffs brought this suit to block the transfer.

## DISCUSSION

I. The Validity of Defendants' Trademark

█ Plaintiffs argue defendants' trademark registration should be cancelled because the word "freebies" has become generic. Defendants claim that their trademark, which extends not merely to the stylized logo of Freebies, but also to the word itself, should not be cancelled because "freebies" is not generic.[2] Although genericness is a question of fact, resolution of this question on summary judgment is nevertheless appropriate where "the evidence is so one-sided that there can be no doubt about how the question should be answered." *Door Sys., Inc. v. Pro–Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir.1996).

█ A trademark registration can be cancelled at any time if the registered mark "becomes the generic name for the goods or services, or a portion thereof, for which it is registered." 15 U.S.C.

---

1. A meta-tag is a word or phase embedded in the HTML code of a web page that describes the contents of the web page. The information included in a meta-tag is used by search engines to index a web page. Therefore, because plaintiffs included the plural word "freebies" in a meta-tag for their website,

freebie.com, an Internet user searching for the term "freebies" would be directed to plaintiffs' site, among others.

2. The Freebies trademark is designated Mark Drawing Code 3, Design Plus Words, Letters, and/or Numbers.

§ 1064(3). A party seeking cancellation of a trademark registration bears the burden of proving, by a preponderance of the evidence, that, in the minds of the consuming public, the significance of the registered term is the general class of product. *See id.; Glover v. Ampak, Inc.,* 74 F.3d 57, 59 (4th Cir.1996). "To become generic, the *primary* significance of the mark must be its indication of the nature or class of the product or service, rather than an indication of source." *Glover,* 74 F.3d at 59 (emphasis in original).

■ Trademark registration is prima facie evidence that the registered term is not generic. *See* 15 U.S.C. § 1115(a); *Glover,* 74 F.3d at 59.[3] This presumption of validity, however, serves only to shift to the party seeking to invalidate the registration the burden of producing evidence that the term is generic. *Convenient Food Mart, Inc. v. 6–Twelve Convenient Mart, Inc.,* 690 F.Supp. 1457 (D.Md.1988), *aff'd* 870 F.2d 654 (4th Cir.1989) (citing *Liquid Controls Corp. v. Liquid Control Corp.,* 802 F.2d 934, 938 (7th Cir.1986)). Evidence of popular understanding of a term may include purchaser testimony, customer surveys, dictionary listings, newspapers, and other publications. *Magic Wand, Inc. v. RDB, Inc.,* 940 F.2d 638, 641 (Fed.Cir. 1991).

■■ To define the relevant purchasing public, a court must look to the class of goods and services for which the trademark was registered. *Glover,* 74 F.3d at 59; *Magic Wand,* 940 F.2d at 641. Defendants' "Freebies" trademark is registered for "periodicals: namely, magazines and newspapers with information about mail order offerings." Df. Ex. 22. Although

defendants have ceased printed publication of Freebies Magazine, they have continued to publish similar material on their website. We may expand defendants' trademark to apply to Internet publications with information about mail order offerings. *See Jews for Jesus v. Brodsky,* 993 F.Supp. 282, 300 (D.N.J.1998) (finding application of plaintiff's trademark for use in "religious pamphlets" to plaintiff's website on which it published the same pamphlets "a natural extension … in view of the new technology of the Internet"). Therefore, the relevant purchasing public in this inquiry includes Internet users seeking information about mail order offerings.

■ Plaintiffs have presented ample evidence that, among Internet users and readers of Internet magazines, "freebies" has become a generic term referring to free or almost free goods and services, and that the word is not associated with defendants in particular. Plaintiffs support their argument in several ways. First, they point to the dictionary definition of "freebie." "Though not conclusive, dictionary definitions of a word … are significant evidence of genericness because they usually reflect the public's perception of a word's meaning and its contemporary usage." *Harley–Davidson, Inc. v. Grottanelli,* 164 F.3d 806 (2d Cir.1999). Plaintiffs have attached a portion of Webster's Ninth New Collegiate Dictionary, published in 1990, which defines "freebie" as "something (as a theater ticket) given or received without charge." Pl.Ex. 6K. The Oxford English Dictionary defines "freebie" as "something that is provided free," and states that the word has been in use since 1942, when it appeared in *The Amer-*

---

**3.** Defendants contend that because their trademark has attained incontestable status under 15 U.S.C. § 1065, plaintiffs are foreclosed from challenging its validity. Defendants misstate the law on incontestable trademarks. Although the defenses to a claim of infringement of an incontestable mark are limited to those enumerated in 15 U.S.C. § 1115(b), the Lanham Act permits cancellation of an incontestable mark at any time if it has become "generic". 15 U.S.C. § 1064(3).

*ican Thesaurus of Slang: A Complete Reference Book of Colloquial Speech,* authored by Lester V. Berrey and Melvin Van den Bark (Thomas Y. Crowell ed., 1942).

Plaintiffs also extensively cite newspapers and magazines that use the words "freebie" or "freebies" to denote free products. Pl.Ex. 6A–D. Most significantly, plaintiffs submit evidence that "freebies" is used on thousands of other websites, *see* Pl.Ex. 6E, demonstrating that, among Internet users in particular, "freebies" is a generic term. Finally, "freebies" appears in thousands of other domain names to indicate that a website contains information about obtaining free or almost free products.[4]

Defendants do not dispute plaintiffs' evidence of widespread use of "freebies." Instead, they argue that their trademark is not generic because they do not use the Freebies mark in providing free or almost free things, but "for the non-generic purpose of providing information about a variety of subjects, including how to obtain things by mail order from third parties." Defendants' Opposition to Plaintiffs' Motion for Summary Judgment at 8. Defendants' argument is totally unsupported by the evidence and conflicts with their own website, which includes a banner stating "BRINGING YOU THE BEST FREE AND ALMOST FREE OFFERS SINCE 1977!" and describes the site as "the best place on the web for free and almost free offers that you won't find anywhere else." Pl.Ex. 6P. For these reasons, we find that, in the public's mind, "freebies" indicates

free or almost free products and is not identified with defendants or their website in particular. Therefore, defendants cannot maintain trademark protection for their use of the word "freebies."[5]

Although "trademark rights in the stylized appearance of a word are distinct from trademark rights in the word itself," *Time, Inc. v. Petersen Pub. Co., LLC,* 173 F.3d 113, 119 (2d Cir.1999), both the stylized word "Freebies" and the word itself are included in defendants' registration. Therefore, the entire trademark registration must be cancelled because "freebies" is generic. In light of this finding, plaintiffs are entitled to summary judgment on defendants' counterclaims, all of which rest on the validity of defendants' trademark.

## II. The Anti–Cybersquatting Consumer Protection Act

■ In their complaint, plaintiffs also seek a declaration that the domain name registration freebie.com does not violate the ACPA. The ACPA prohibits registration of a domain name that is confusingly similar to a trademark with bad faith intent to profit from that confusion. Because we have already found defendants' trademark ineligible for protection, there can be no ACPA violation. However, even if defendants' trademark were entitled to protection, we find that plaintiffs' domain name, freebie.com, does not violate the ACPA, and that the decision of the UDRP Arbitration panelist should be reversed.

■ Decisions made by arbitration panels under the UDRP are not afforded

---

**4.** Examples include freebiesplanet.com, christianfreebies.com, freebiesforwomen.com, craftfreebies.com, christmasfreebies.com, americanfreebies.com, and financial-freebies.com.

**5.** If defendants used the word "freebies" in reference to a different class of goods or services, it might be protectable. For example,

use of "freebies" to refer to additive-free food products might constitute a non-generic use of the word and, therefore, qualify for trademark protection. However, because defendants use the word in its generic sense, to indicate that their website contains information about free or almost free offers, they are not entitled to trademark protection.

deference by the district court. *Parisi v. Netlearning, Inc.,* 139 F.Supp.2d 745 (E.D.Va.2001); *Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft,* 213 F.Supp.2d 612, 617 (E.D.Va.2002) (judicial review of World Intellectual Property Organization decision is *de novo* ); *see also Sallen v. Corinthians Licenciamentos LTDA,* 273 F.3d 14, 20 (1st Cir.2001) ("[T]he UDRP explicitly contemplates independent review in national courts."). In this case, the arbitrator's decision is unsupported by the evidence. Therefore, it must be reversed.

The ACPA prohibits (1) registration or use of a domain name that "is identical or confusingly similar to" or dilutive of a trademark (2) with "bad faith intent to profit from that mark." 15 U.S.C. § 1125(d). As discussed above, we find that defendants' Freebies trademark is not entitled to protection. However, even if defendants' mark were valid, there was insufficient evidence before the arbitrator and in this record to sustain a finding that plaintiff registered the domain name in bad faith.

Under the ACPA, a court must consider nine statutory factors in determining whether plaintiffs registered their domain name in bad faith. These factors include: (1) the trademark rights of the plaintiffs in the offending domain name, (2) whether the domain name contains the legal name of the plaintiffs, (3) prior use of the domain name in connection with a bona fide business, (4) plaintiffs' bona fide noncommercial use of the mark, (5) plaintiffs' intent to divert customers, (6) plaintiffs' offer to sell the domain name, (7) plaintiffs' provision of false registration information, (8) plaintiffs' registration of multiple similar domain names, and (9) the strength of defen-

dants' mark. *See* 15 U.S.C. § 1125(d)(1)(B)(i).

Defendants concede that statutory factors 6 and 7, that is, offers to sell the domain name and providing false or misleading registration information, are not present here. Although plaintiffs do not have trademark rights in the word "freebie" or the domain name freebie.com, the domain name has been registered to Retail Services since 1995. Moreover, in November 1999, Freebie, Inc. was created as a subsidiary of Retail Services. The evidence in this record clearly establishes that plaintiffs use the domain name freebie.com in connection with a legitimate business. The only similar domain name registered by plaintiffs is freebee.com.

The NAF panelist based her conclusion that plaintiff had registered freebie.com in bad faith on one fact: the inclusion of the word "freebies" in the meta-tag for the website, freebie.com.[6] She found this meta-tag evidence of plaintiffs' intent to divert defendants' customers. The panelist's finding that the meta-tag is evidence of plaintiffs' opportunistic bad faith is directly contradicted by the evidence that the parties are not competitors. Plaintiffs' website, freebie.com, provides Freebie, Inc. members, nearly all of whom are Blockbuster customers, access to their Freebie Points account and the ability to redeem Freebie Points for discounts on other products. Visitors to plaintiffs' website must become members and can only earn Freebie Points by shopping at Blockbuster stores. Plaintiffs' website does not, therefore, compete with defendants' website, which provides general information about obtaining a variety of free products. On the evidence we do not find that the freebies meta-tag was intended to divert de-

---

6. The NAF panelist wrote of her decision that "the result might well have been different had Respondent not taken the extra step of adding FREEBIES as meta-tags to its domain name website." Pl.Ex. 15 at 11.

fendants' customers. Moreover, we find significant the absence of evidence in this record of any customer confusion about the two different websites. Because none of the other statutory factors supports the conclusion that plaintiffs acted in bad faith, we find that plaintiffs have not violated ACPA, and that the decision of the NAF panelist must be reversed.

In their complaint, plaintiffs sought reasonable attorneys' fees and costs expended in bringing this civil action. However, this request is not addressed in plaintiffs' Motion for Summary Judgment. Costs of bringing a civil action are normally available under the Lanham Act in cases where "a violation of any right of the registrant of a mark . . . shall have been established." 15 U.S.C. § 1117(a). Because no violation of a registered trademark has been establish, no costs are available under the Lanham Act.

 Under the Lanham Act, prevailing defendants may recover attorneys' fees in "exceptional" cases. *Ale House Management, Inc. v. Raleigh Ale House, Inc.,* 205 F.3d 137, 144 (4th Cir.2000). Plaintiffs in this action, who are prevailing counter-defendants, must show "something less than bad faith" in order to recover attorneys' fees. *Scotch Whisky Ass'n v. Majestic Distilling Co.,* 958 F.2d 594, 599 (4th Cir.1992). We find that this case is not exceptional because, although counter-claim-plaintiffs' trademark was not entitled to protection, their conduct in attempting to protect the trademark was not malicious or fraudulent. Counterclaim-plaintiffs had a good faith belief, based on their trademark registration and the decision of the UDRP arbitration panelist, that their "Freebies" trademark was entitled to protection. Although we have concluded that it is not, we will not impose an award of attorneys' fees on them for making such a claim.

For these reasons, plaintiffs are entitled to summary judgment on all counts of the complaint and counterclaim, but not entitled to recover their attorneys' fees. An appropriate Order will issue.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.

## *ORDER*

For the reasons stated in the accompanying Memorandum Opinion, plaintiffs' Motion for Summary Judgment is GRANTED, and it is hereby

ORDERED that judgment be and is entered in favor of plaintiffs against defendants as to all counts of the complaint and counterclaim; and it is further

ORDERED that the Trademark Registration No. 1,807,431 be cancelled and removed from the Principal Register pursuant to 15 U.S.C. § 1119; and it is further

ORDERED, ADJUDGED, AND DECREED that plaintiffs' use of the domain name www.freebie.com does not violate the Anti–Cybersquatting Consumer Protection Act; and it is further

ORDERED, ADJUDGED, AND DECREED that the ruling of the Arbitration Panel ordering Network Solutions, Inc. to transfer the domain name www.freebie.com to Freebies Publishing is null and void and plaintiff Retail Services, Inc. shall retain ownership of said domain name; and it is further

ORDERED, ADJUDGED, AND DECREED that plaintiffs have a right to use, in connection with their business, the domain name www.freebies.com, and the terms "freebie" and "freebies" to identify free or discounted merchandise and services related thereto, free from interference by defendants, their representatives, successors, and assigns.

The Clerk is directed to enter judgment pursuant to Fed.R.Civ.P. 58 and to for-

ward copies of this Order to counsel of record.